No. 04-97-00260-CV



TAPERED INSULATION SYSTEMS, INC., 


Jan Zornow, Individually, and Sharon Lynch, Individually,


Appellants



v.



SCHULLER INTERNATIONAL, INC.
;

Schuller International, Inc. d/b/a Manville Roofing Systems; Schuller International, Inc. d/b/a
Manville Sales Corporation; Schuller International, Inc. d/b/a Mountain Technical Center, Inc.;
and Manville Products Corporation,

Appellees



From the 57th Judicial District Court, Bexar County, Texas


Trial Court No. 94-CI-02323


Honorable David A. Berchelmann, Jr., Judge Presiding(1)



Opinion by: Sarah B. Duncan, Justice


Sitting: Phil Hardberger, Chief Justice

 Tom Rickhoff, Justice

 Sarah B. Duncan, Justice


Delivered and Filed: December 23, 1998


AFFIRMED


 Tapered Insulation Systems, Inc., Jan Zornow, individually, and Sharon Lynch, individually
(collectively, Tapered Insulation), appeal the summary judgment entered against them in their suit
against Schuller International, Inc. for breach of contract, promissory and equitable estoppel, tortious
interference with existing contracts and prospective business relations, violations of the Deceptive
Trade Practices Act (DTPA), fraud, fraudulent inducement, and negligent misrepresentation. We
affirm.

Factual and Procedural Background


 In the spring of 1991, Zornow and Lynch worked in Mississippi for Cant Strip Corporation
of America. Schuller International, Inc., formerly known as Manville Sales Corporation,
manufactured flat perlite roofing insulation boards and contracted with fabricators, like Cant Strip,
to design and taper the boards for use on Schuller roofing jobs. As part of the agreement with
fabricators like Cant Strip, Schuller agreed to provide "no dollar limit" guarantees to the end
purchasers of the product under which they would pay the end purchaser any amount up to and
including the replacement cost to fix a roof covered by a warranty.

 By the end of spring 1991, Schuller, as well as Zornow and Lynch, knew that Cant Strip's
Mississippi plant would be shutting down. Starting in May 1991, Schuller employee Doug Glenn
engaged in talks with Zornow and Lynch concerning the possibility of opening a fabrication plant
in Texas. According to Zornow, Glenn promised that Schuller would allow Zornow to supply
tapered perlite on Schuller-guaranteed roofing jobs if he opened a plant in Texas. Zornow also
claims Glenn promised to help him obtain credit and special pricing on flat perlite. The parties never
discussed the duration of the agreement and never executed a written fabrication agreement.

 Based on their negotiations with Glenn, Zornow and Lynch moved to San Antonio in August
1991 and established Tapered Insulation Systems, Inc. in preparation of fabricating tapered perlite.
In turn, Schuller helped Tapered Insulation obtain credit to purchase Schuller flat perlite at special
rates and allowed it to provide tapered perlite boards on Schuller-guaranteed roofing jobs. In March
1992, Schuller formally announced its intention to vertically integrate the tapered perlite fabrication
program and begin fabricating tapered perlite itself. In August 1992, Schuller notified its sales
representatives that Tapered Insulation's products were no longer approved on Schuller-guaranteed
jobs. Tapered Insulation began losing buyers of its product the next month.

 Apparently, Schuller had been considering vertical integration for some time before it
notified its authorized fabricators. In the fall of 1990, Schuller received a proposal for a study, based
on its own inquiries, on the current market for tapered roof insulations, including perlite. One of the
areas the research group proposed to study was whether Schuller should "expand its fabricator
network, or exit this segment of the business and manufacture its own tapered insulation board." By
April 1991, Maureen O'Meara-Sanzo, the Schuller employee in charge of the fabricator program,
believed Schuller needed to begin fabricating tapered perlite but was having difficulty selling
Schuller management on the idea. O'Meara-Sanzo sent out a memorandum on July 17, 1991, with
a proposed strategy for revamping the fabricator program. O'Meara-Sanzo proposed as part of the
strategy that Schuller "determine feasibility of [Schuller] fabricating all tapered perlite products and
be prepared to implement by January, 1994." Subsequently, on September 19, 1991, Schuller
contacted one of the fabricators in its program to set up a meeting in which they could discuss the
possibility of the fabricator's assisting Schuller in setting up its own fabrication process. The
fabricator believed that at that time Schuller had already decided to enter the business of
manufacturing tapered perlite. Schuller contacted at least one other person in October 1991
concerning the same proposition as posed to the first fabricator. A few months later, in early 1992,
Schuller announced to the fabricators in its program it would be fabricating tapered perlite.

 In February 1994, Tapered Insulation filed suit against Schuller alleging breach of contract,
promissory and equitable estoppel, tortious interference with existing contracts and prospective
business relations, violations of the DTPA, fraud, fraudulent inducement, and negligent
misrepresentation. The trial court granted two motions for partial summary judgment, disposing of
all the claims.

 Standard of Review


 We review a summary judgment de novo. "[W]e will uphold a summary judgment only if
the summary judgment record establishes that there is no genuine issue of material fact, and the
movant is entitled to judgment as a matter of law on a ground set forth in the motion." Valores
Corporativos, S.A. de C.V. v. McLane Co., 945 S.W.2d 160, 162 (Tex. App.--San Antonio 1997,
writ denied); see Tex. R. Civ. P. 166a(c). If an affirmative defense is the basis for a summary
judgment, there must be no genuine issue of material fact with respect to each element of that
defense for the court to uphold the judgment. Montgomery v. Kennedy, 669 S.W.2d 309, 310-11
(Tex. 1984). In determining whether a genuine issue of material fact exists, "we view as true all
evidence favorable to the non-movant and indulge every reasonable inference, and resolve all doubts,
in its favor." Valores, 945 S.W.2d at 162.

Breach of Contract


 Tapered Insulation claims Schuller entered a contract pursuant to their negotiations with
Glenn. According to Zornow and Lynch, they agreed to move to Texas and establish a fabricating
plant while Schuller agreed to help them obtain credit and purchase materials and to allow them to
supply tapered perlite on Schuller-guaranteed roofing jobs. Tapered Insulation claims it fulfilled its
part of the agreement, but Schuller breached by fabricating its own tapered perlite and disallowing
Tapered Insulation's tapered perlite on guaranteed jobs.

 To establish a breach of contract claim, a plaintiff must show: "(1) the existence of a valid
contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the
defendant; and (4) damages to the plaintiff resulting from that breach." Prudential Sec. Inc. v.
Haugland, 973 S.W.2d 394, 396 (Tex. App.--El Paso 1998, pet. filed); Wright v. Christian & Smith,
950 S.W.2d 411, 412 (Tex. App.--Houston [1st Dist.] 1997, no writ).

 In its motion for summary judgment, Schuller claimed its contract with Tapered Insulation
was nonexclusive and terminable at will. Under Clear Lake City Water Auth. v. Clear Lake Util. Co.,
549 S.W.2d 385, 390 (Tex. 1977), "contracts which contemplate continuing performance (or
successive performances) and which are indefinite in duration can be terminated at the will of either
party." The evidence demonstrates if there was a contract between Tapered Insulation and Schuller,
it was for continuing performance of an indefinite duration.

 Tapered Insulation concedes the parties never agreed to a duration, but it argues on appeal
the contract was still not terminable at will. The Clear Lake Court noted that where a court is
"dealing with exclusive franchise or distributorship agreements, which are indefinite in duration and
which contemplate the expenditure of substantial sums of money or other investments by one of the
parties preparatory to or in accordance with his performance under the contract," it may imply a
"reasonable duration during time which the agreement is not terminable at will." Id. at 391. Tapered
Insulation argues it entered into such an agreement with Schuller and, therefore, is entitled to a
reasonable opportunity in which to perform under the contract, recoup [its] investment, and realize
a reasonable profit."

 However, simply because a contract requires expenditure or investment by one of the parties,
does not necessarily mean the contract must last for a reasonable period of time before it becomes
terminable at will. See, e.g., Farah v. Mafrige & Kormanik, P.C., 927 S.W.2d 663, 677-78 (Tex.
App.--Houston [1st Dist.] 1996, no writ) (holding loan agreement terminable at will, despite
appellant's argument that contract contemplated expenditure or investment of funds by one of the
parties, because the contract required continuing performance for an indefinite duration). The
exception to the rule of terminable-at-will contracts is made for "exclusive franchise or
distributorship agreements." Clear Lake, 549 S.W.2d at 391. Assuming an agreement was reached
during the negotiations between Zornow and Glenn, it certainly was not for a franchise as described
in Clear Lake. See Clear Lake, 549 S.W.2d at 391 (citing Hall v. Hall, 158 Tex. 95, 308 S.W.2d 12
(1957); D.E. Buckner, Annotation, Termination By Principal of Distributorship Contract Containing
No Express Provision For Termination, 19 A.L.R.3d 196 at 319-24 (1968)). The law implies a
reasonable duration in a terminable-at-will exclusive franchise contract to protect a vulnerable
franchisee from loss. See 19 A.L.R.3d 196 at 326. Here, Tapered Insulation does not demand the
protection of a franchisee because it was not promised an exclusive right to fabricate for Schuller
jobs in the area and it did not rely solely on Schuller for its fabricating business. Cf. Hall, 308
S.W.2d at 13-15. Under these circumstances, Tapered Insulation is not entitled to an implication of
reasonable duration on its terminable-at-will contract. Thus, summary judgment on Tapered
Insulation's contract claim was proper because the undisputed evidence shows Schuller did not
breach the contract by terminating it at its own will.

Equitable and Promissory Estoppel


 Tapered Insulation asserts that if the oral contract failed because of the statute of frauds,
Schuller should be estopped from denying the existence of the contract. However, neither equitable
nor promissory estoppel can save Tapered Insulation's breach-of-contract claim because, even if the
existence of a contract were undisputed, the contract was still terminable at will. Thus, Schuller is
still entitled to summary judgment on the ground that it did not breach the contract by terminating
it at its own will.

Tortious Interference


 Tapered Insulation also brought causes of action against Schuller for tortious interference
with existing contractual relations and prospective business relations. It claims Schuller interfered
by informing tapered perlite suppliers Schuller would no longer guarantee jobs on which Tapered
Insulation's materials were used. In its motion for summary judgment, Schuller asserted the
affirmative defense of justification to these claims, arguing it was justified in interfering with
Tapered Insulation's contractual relations because it was exercising its own right to decide who
could fabricate products that would go onto Schuller-guaranteed roofs. Tapered Insulation argues
on appeal the summary judgment on its tortious interference claims was improper because Schuller
failed to establish its affirmative defense as a matter of law and Schuller neglected to identify which
contracts it had a right to interfere with.

 "A party is justified in interfering with another's contract if it exercises (1) its own legal
rights or (2) a good faith claim to a colorable legal right, even though that claim ultimately proves
to be mistaken." Friendswood Dev. Co. v. McDade + Co., 926 S.W.2d 280, 282 (Tex. 1996).
Schuller, as guarantor, has a right to choose what it will and will not guaranty. This decision falls
within its discretionary business judgment. See W. Page Keeton et al., Prosser and Keeton on
the Law of Torts § 129, 986-88 (5th ed. 1984). Furthermore, no limits were placed on this right
by the contract between Tapered Insulation and Schuller because the contract, if it existed at all, was
terminable at will. Under the very terms of the contract, Schuller could withdraw its promise to allow
Tapered Insulation to supply tapered perlite on guaranteed jobs at any time. Therefore, Schuller was
justified in interfering with Tapered Insulation's existing and prospective contractual relations with
suppliers. Cf. Schoellkopf v. Pledger, 778 S.W.2d 897, 904 (Tex. App.--Dallas 1989, writ denied)
(holding guarantor of loan privileged to withdraw guaranties and thus interfere with existing
contractual relations where guaranty contract provided guarantor with the option to withdraw).

 Moreover, we find no case law to support Tapered Insulation's argument that a defendant
who asserts a justification defense bears the burden of identifying the contract with which it believes
it is privileged to interfere. To the contrary, it is Tapered Insulation's burden to identify the "contract
subject to interference" for existing contracts, Friendswood, 926 S.W.2d at 282, and prove "the
reasonable probability that a contract would be created" for prospective business relations. Santa Fe
Energy Operating Partners v. Carrillo, 948 S.W.2d 780, 784 (Tex. App.--San Antonio 1997, writ
denied). Only if this burden is met does the defendant need to assert its affirmative defense of
justification. Thus, Schuller fully met its burden in establishing the affirmative defense of
justification and was entitled to summary judgment on Tapered Insulation's tortious interference
claims.

Deceptive Trade Practices Act


 Tapered Insulation further asserted DTPA claims against Schuller for "false, misleading acts
or practices in the conduct of trade or commerce." Under section 17.50 of the DTPA, "[a] consumer
may maintain an action" against another person if that person used false, misleading, or deceptive
acts or practices as defined by subsection (b) of section 17.46 or if that person breached an express
or implied warranty. Tex. Bus. & Com. Code Ann. § 17.50 (Vernon Supp. 1998) (emphasis added).
Schuller moved for summary judgment on the basis that Tapered Insulation was not a consumer.

 A "consumer" is defined in the DTPA as "an individual, partnership, corporation, this state,
or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or
services." Id. § 17.45(4) (Vernon 1987). A plaintiff must meet a two-pronged test in order to
establish consumer status: (1) the plaintiff "must have sought or acquired goods or services by
purchase or lease," and (2) "the goods or services purchased or leased must form the basis of the
complaint." Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 351-52 (Tex. 1987).

 Tapered Insulation argues it was a consumer because Schuller's promise to allow it to supply
tapered perlite on Schuller-guaranteed jobs was a service. Tapered Insulation also argues it obtained
consumer status because its agreement with Schuller was basically a franchise agreement coupled
with other services. See Texas Cookie Co. v. Hendricks & Peralta, Inc., 747 S.W.2d 873, 876-77
(Tex. App.--Corpus Christi 1988, writ denied) (holding franchise agreement that conferred a host
of collateral services, such as a training program, a confidential operating manual, and unique system
of operation, involved a transfer of goods and services for purposes of the DTPA). However,
Tapered Insulation's argument is based on a misperception of the agreement involved in this case.
While Tapered Insulation is correct that insurance of another's performance is a service under the
DTPA, the consumer of such a service is the actual recipient of the insurance or guaranty. See HOW
Ins. Co. v. Patriot Fin. Serv. of Texas, Inc., 786 S.W.2d 533, 539 (Tex. App.--Austin 1990, writ
denied), overruled on other grounds by Hines v. Hash, 843 S.W.2d 464, 469-70 (Tex. 1992). Thus,
in this situation, the consumer of Schuller's guaranty would be the end purchaser of the roofing
materials, not the fabricator. Tapered Insulation simply received an intangible right to supply tapered
perlite under that guaranty. It was, in effect, a secondary beneficiary of the service provided to the
end-of-the-line purchaser.

 Tapered Insulation's reliance on Texas Cookie is equally misplaced. In Texas Cookie the
collateral services supplied to the franchisee were "clearly an objective of the transaction and not
merely incidental to it." Texas Cookie, 747 S.W.2d at 877. Here, even if we assume the agreement
is akin to a franchise agreement, the collateral services, such as assistance in obtaining credit and
special pricing for purchase of flat perlite, were merely incidental to the main transaction, which was
concerned with supplying tapered products on Schuller-guaranteed jobs. See Fisher Controls Int'l,
Inc. v. Gibbons, 911 S.W.2d 135, 139 (Tex. App.--Houston [1st Dist.] 1995, writ denied) (holding
sales representative agreement did not confer consumer status on representative because collateral
services, including the right to a commission and the right to buy products at a discount before
reselling them, were incidental to the transaction). Tapered Insulation's complaint is not based on
denial of the collateral services but on Schuller's refusal to allow it to supply tapered perlite on
guaranteed jobs. The trial court correctly rendered summary judgment against Tapered Insulation
on its DTPA claims.

Fraud and Fraudulent Inducement


 Tapered Insulation brought fraud and fraudulent inducement claims based on: (1) Schuller's
representations that Tapered Insulation would be allowed to supply tapered perlite on Schuller-guaranteed jobs, Schuller would assist Tapered Perlite obtain credit and obtain flat perlite, and
Schuller would make Tapered Insulation part of its fabricator program; and (2) Schuller's failure to
disclose it intended to fabricate tapered perlite and eliminate the fabricator program.

 To establish claims for fraud and fraudulent inducement, a plaintiff must prove: (1) the
defendant made a material misrepresentation; (2) the misrepresentation was false; (3) when the
defendant made the misrepresentation, he knew it was false or he made it recklessly without any
knowledge of the truth; (4) the defendant intended that the party act upon the misrepresentation; (5)
the plaintiff acted in reliance upon the misrepresentation; and (6) the plaintiff suffered an injury
therefrom. Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc., 960 S.W.2d 41,
47 (Tex. 1998); Sears, Roebuck & Co. v. Meadows, 877 S.W.2d 281, 282 (Tex. 1994). If the
plaintiff's claims are based on alleged misrepresentations of future actions, the plaintiff must show
the defendant did not intend to perform at the time the promise was made. Formosa, 960 S.W.2d at
48; Wolf v. Fernandez, 733 S.W.2d 695, 697 (Tex. App.--San Antonio 1987, writ ref'd n.r.e.). And
a plaintiff can base a fraud claim on a failure to disclose only if there was a duty to disclose.
Bernstein v. Portland Sav. and Loan Ass'n, 850 S.W.2d 694, 701 (Tex. App.--Corpus Christi 1993,
writ denied). There is no duty to disclose that which one does not know. Prudential Ins. Co. of
America v. Jefferson Assoc., 896 S.W.2d 156, 162 (Tex. 1995).

 Schuller moved for summary judgment on Tapered Insulation's fraud and fraudulent
inducement claims on the ground it intended to perform its promises at the time it made them. The
summary judgment evidence conclusively establishes Schuller's contention. Tapered Insulation
admits Schuller helped it obtain credit and buy flat perlite at a discount and allowed it to supply
tapered perlite on guaranteed jobs. Actual performance of a promise after a promise is made is a
fairly strong indication that a person intended to perform that promise when he made it. See Bank
One, Texas, N.A. v. Stewart, 967 S.W.2d 419, 444-46 (Tex. App.--Houston [14th Dist.] 1998, Rule
53.7 motion filed). The fact Schuller stopped performing its promises a year after the agreement was
made is no evidence that Schuller had no intent to perform those promises, see id. at 444; Spoljaric
v. Percival Tours, Inc., 708 S.W.2d 432, 435 (Tex. 1986), especially considering the contract, if it
existed at all, was terminable at will.

 The summary judgment evidence also conclusively establishes Schuller did not in fact intend
to enter the fabrication market or end its fabrication program during its negotiations with Zornow
and Lynch in May 1991 or even when performance began in mid-August 1991 when Zornow and
Lynch moved to San Antonio. The summary judgment evidence shows that at that time Schuller
was, at most, considering the possibility of vertical integration. The only evidence concerning
vertical integration before August 1991 is the 1990 proposal to study the tapered roof insulation
market and O'Meara-Sanzo's recommendations to Schuller management. The summary judgment
evidence is that Schuller management had not decided to vertically integrate at the time it entered
the agreement with Tapered Insulation. Schuller therefore had no duty to disclose that such a
decision had been made. See Prudential, 896 S.W.2d at 162; Storms v. Tuck, 579 S.W.2d 447, 452
(Tex. 1979). The trial court correctly rendered summary judgment on Tapered Insulation's fraud and
fraudulent inducement claims.

Negligence and Negligent Misrepresentation


 Finally, Tapered Insulation claims Schuller negligently misrepresented it would help Tapered
Insulation establish a fabricator business that could supply tapered perlite on Schuller-guaranteed
jobs and negligently failed to disclose that Schuller intended to fabricate its own tapered perlite to
the exclusion of Tapered Insulation.

 To establish a negligent misrepresentation cause of action, a plaintiff must prove, among
other elements, the defendant supplied "'false information' for the guidance of others in their
business." Federal Land Bank Ass'n v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991). "The 'false
information' supplied must have been a misstatement of existing fact." Clary Corp. v. Smith, 949
S.W.2d 452, 463 (Tex. App.--Fort Worth 1997, pet. denied); see Airborne Freight Corp. v. C.R. Lee
Enter., 847 S.W.2d 289, 294 (Tex. App.--El Paso 1992, writ denied).

 Schuller's representation that it would help Tapered Insulation establish a fabricator business
for tapered perlite on guaranteed jobs was not a statement of existing fact. Therefore, this
representation cannot provide a basis for a negligent misrepresentation claim. Moreover, as
discussed above, Schuller's intent to vertically integrate the fabricator program was not an "existing
fact" at the time Zornow and Lynch moved to San Antonio. Accordingly, the trial court correctly
rendered summary judgment on appellants' negligence and negligent misrepresentation causes of
action.

Conclusion


 The summary judgment evidence conclusively establishes Schuller at most entered a
terminable-at-will contract with Tapered Insulation to help it establish a fabrication business and
supply tapered perlite on Schuller-guaranteed roofing jobs. At the time this contract was made,
Schuller may have been considering vertical integration of the fabricator program, but it had not yet
made the decision to do so. Schuller was thus entitled to summary judgment on each of Tapered
Insulation's causes of action. We therefore overrule Tapered Insulations points of error and affirm
the trial court's judgment.


 Sarah B. Duncan, Justice

DO NOT PUBLISH

1. The Honorable David Peeples granted the first of two partial summary judgments of which the appellants
complain on appeal. The Honorable David A. Berchelmann, Jr. granted the second partial summary judgment and signed
the final judgment.


Return to
4th Court of Appeals Opinions