CLEAR LAKE CITY WATER AUTHORITY, Petitioner,

v.

CLEAR LAKE UTILITIES COMPANY et al., Respondents.

No. B-6071.

Supreme Court of Texas.

April 13, 1977.

Rehearing Denied May 11, 1977.

Vinson, Elkins, Searls, Connally & Smith, Raybourne Thompson, Jr. and W. Allyn Hoaglund, Houston, for petitioner.

Butler, Binion, Rice, Cook & Knapp, Louis B. Paine, Jr. and R. Hayden Burns, Jerry L. Bryan, Delange, Hudson, Pitman & Katz, Eugene J. Pitman, Houston, Charles A. Easterling, Pasadena, for respondents.

REAVLEY, Justice.

Clear Lake Utilities Company (Utilities) initiated this litigation. Utilities sought a declaratory judgment that its contract with Clear Lake Water Authority (Authority) remains a valid and binding contract to give Utilities an exclusive right to provide water and sewer service to all landowners within a certain 100 acre tract. Utilities also sought a declaratory judgment that the property owned by Clear Lake Apartments, Inc. (Apartments), and within the 100 acre tract, could obtain water and sewer service only from Utilities by virtue of a contract between Utilities and the predecessor in title to that property, North Clear Lake Development Corporation (NCL). Authority then sought a declaratory judgment that its contract with Utilities is no longer in effect, either because it was void from the beginning or was legally terminated. Apartments contended that it is not bound by the contract between NCL and Utilities. Utilities also sought damages from Authority and the City of Pasadena (Pasadena) for conspiracy and wrongful interference with the contract between Utilities and Authority. The trial court declared both contracts to be valid and binding on Authority and Utilities and Apartments for a period of five years from the date of its judgment. Utilities was denied any recovery of damages. The Court of Civil Appeals affirmed the denial of damages, but otherwise reversed the trial court judgment. As to the controversy between Utilities and Apart-ments, the Court of Civil Appeals held that Apartments is not bound by the exclusive service provision in the contract between Utilities and NCL. The controversy between Utilities and Authority was sent back to the trial court with instructions that it could not proceed to render a declaratory judgment without the joinder as parties of all the landowners in the 100 acre tract who have contracts with Utilities making them dependent upon Utilities for water and sewer service. 537 S.W.2d 48. We agree with the Court of Civil Appeals except that we decide the controversy between Utilities and Authority without the joinder of the other landowners.

In the early 1960's Lester Tatum, the owner of a 100 acre tract of land on the north shore of Clear Lake near Pasadena, sold portions of this tract to a number of corporations he had formed for the purpose of promoting the residential development of the land. NCL was one of these corporations; it purchased the eight acres which was later resold to Apartments. In 1963 Tatum and others formed Utilities, a private utility company, to provide water and sewer service to the 100 acre tract which was not at the time within the boundaries of any municipality or water district. Utilities obtained the necessary permits for the operation of a private utility and undertook construction of a system capable of providing water and treating sewage.

At the urging of the Water Pollution Control Board, which was advocating regionalized sewer systems as an alternative to the proliferation of smaller less efficient systems, Utilities entered into negotiations for water and sewer service with Authority, a conservation and reclamation district created pursuant to statute. By an agreement dated July 11, 1966, Authority promised to furnish Utilities with water and sewage treatment service for the 100 acre tract. In return Utilities agreed to construct and maintain, at no expense to Authority, a water and sewer pipeline system capable of serving the tract and to pay Authority for the water and sewer service at a rate one and one-half times that charged by Author-

ity to its customers located within Authority's boundaries. This contract provided that Utilities "shall have the exclusive right, as between the parties hereto, to furnish water and sanitary sewer service to parties within said tract." The contract was silent as to its duration. Utilities abandoned its plan to build a sewage disposal plant, abandoned portions of the sewage lines which had been constructed pursuant to its initial plan of development, and relinquished its water well and sewage disposal permits. Authority has from the time of this contract to the present provided Utilities water and sewer service for the 100 acre tract.

Following the execution of the July 11, 1966 agreement with Authority, Utilities entered into water and sewer service contracts with the various landowners of the 100 acres. Typical of these contracts was the one between Utilities and NCL executed on November 21, 1967 in which Utilities agreed to construct water and sewer lines adjacent to, and capable of providing service to, the eight acre tract; in return NCL agreed to contribute $23,000 toward the costs of the contemplated construction, and granted Utilities the exclusive right to furnish water and sewer service to the land. The contract provided: "The term of this agreement shall continue in effect and be irrevocable for the maximum period of time which it may lawfully do so" and will "be binding upon and shall inure to the benefit of . . . successors and assigns . . . and shall constitute a covenant running with said land . . . ." The agreement was expressly made subject to all applicable provisions of the July 11, 1966 agreement between Utilities and Authority. The contract was recorded in the Harris County Deed Records shortly after it was executed. An apartment project was erected upon the land in 1968; through mesne conveyances the eight acres is now owned by Apartments.

## THE CONTROVERSY BETWEEN APARTMENTS AND UTILITIES

The eight acre tract originally owned by NCL and now owned by Apartments is within an area annexed by Pasadena in August of 1970. In 1975 Apartments notified Utilities of its intention to terminate service from Utilities and to obtain water and sewer service from Pasadena. Utilities then instituted this suit in which it seeks a declaration that the exclusive service provision in its contract with NCL is binding on Apartments either as a covenant running with the land or as an equitable servitude. The Court of Civil Appeals held that Apartments is not bound by the provision under either theory; in this Court Utilities presses only its contention that the provision is enforceable in equity.

■ Utilities attempts to invoke the doctrine of equitable obligation or servitude, whereby a landowner's promise binds a subsequent purchaser or possessor who acquires the land with notice of the promise. Restatement of Property § 539 (1944); Williams, Restrictions On The Use of Land: Equitable Servitudes, 28 Tex.L.Rev. 194 (1949). This attempt must fail for that doctrine has application only to promises *respecting the use of land. Montgomery v. Creager*, 22 S.W.2d 463, 466 (Tex.Civ.App. 1929, no writ); Restatement of Property, Nature of Promises Respecting the Use of Land, Introductory Note p. 3150 (1944). NCL's grant of an exclusive franchise cannot be so classified. Enforcement of the exclusive service provision would not have restricted NCL in the use of its real property; whatever the use of the land, NCL's right under the contract to take or refuse water would have remained unimpaired. At most NCL's promise limited NCL's freedom to contract with other suppliers of water and sewer service. Such a limitation affects the use of land only collaterally and will not create an equitable servitude upon the land. We hold, therefore, that Apartments is not bound by the promise of NCL to deal exclusively with Utilities.

## THE CONTROVERSY BETWEEN AUTHORITY AND UTILITIES

■ The Court of Civil Appeals did not find it necessary to determine the validity

and status of the contract between Authority and Utilities, because it agreed with Utilities that the absence of indispensable parties deprived the trial court of jurisdiction to render judgment. This holding was premised on the belief that all of the landowners in the 100 acre tract, having contracts with Utilities expressly made subject to the Utilities-Authority contract, were indispensable parties under § 11 of the Uniform Declaratory Judgments Act. Art. 2524–1, Vernon's Ann.Civ.Stat. Utilities failed to preserve error in this regard by properly challenging by plea in abatement, or other proper pleading, the absence of the landowners or by attempting itself to bring them into the suit. *See* 1 McDonald, Texas Civil Practice § 3.33 (1965).

 Section 11 of the Uniform Declaratory Judgments Act reads in part:

When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings.

We are in agreement with the Court of Civil Appeals that joinder under § 11 of persons "who have or claim any interest which would be affected by the declaration" is mandatory. This is the clear import of the language, the construction supported by the great weight of authority, and the apparent intent of the drafters. *See Crickmer v. King*, 507 S.W.2d 314 (Tex. Civ.App.1974, no writ); Annot., 71 A.L.R.2d 723, 730–733 (1960); Borchard, The Uniform Act on Declaratory Judgments, 34 Harv.L.Rev. 697, 709 (1921).

We do not, however, agree with the holding of the Court of Civil Appeals (supported by *Crickmer v. King, supra*) that noncompliance with § 11 uniformly constitutes a *jurisdictional* defect. Nor do we agree that Rule 39, Tex.R.Civ.P.[1] fashions permissive joinder rules inconsistent with the mandatory joinder requirements of § 11 and therefore inapplicable to actions for declaratory judgment under the holding of *Few v. Charter Oak Fire Insurance Co.*, 463 S.W.2d 424 (Tex.1971), that a procedural rule established by this Court under Article V § 25 of the Texas Constitution must yield to a conflicting statutory enactment. We believe that the principles of § 11 and Rule 39 are compatible.

Subdivision (a) of Rule 39 and § 11 are both mandatory provisions; both provide in slightly different language that individuals claiming an interest which would be affected or prejudiced by the judgment in the case "shall be joined." The fact that there

---

1. **Rule 39. Joinder of Persons Needed for Just Adjudication.**

(a) Persons to be Joined if Feasible. A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.

(b) Determination by Court Whenever Joinder Not Feasible. If a person as described in subdivision (a) (1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.

(c) Pleading Reasons for Nonjoinder. A pleading asserting a claim for relief shall state the names, if known to the pleader, of any persons as described in subdivision (a) (1)–(2) hereof who are not joined, and the reasons why they are not joined.

(d) Exception of Class Actions. This rule is subject to the provisions of Rule 42.

is no litmus paper test for determining whether a particular person falls within that class of individuals does not render the language of either provision permissive. *See Cooper v. Texas Gulf Industries, Inc.,* 513 S.W.2d 200, 204 (Tex.1974). The trial court is not relieved of its duty to effect joinder under subdivision (a) of Rule 39 by the principles found in subdivision (b). Subdivision (b) does not prescribe rules for joinder but rather provides a basis for a determination of whether the action should proceed in the absence of parties described in subdivision (a). The discretion allowed the trial court in this regard is not inconsistent with the general joinder mandate of § 11 or with the provisions of Article 2524–1 as a whole.

Unlike Rule 39, Article 2524–1 does not purport to enumerate the circumstances under which a court should proceed among the parties before it when persons claiming an interest in the subject matter cannot be joined. However, the drafters of Article 2524–1 expressly declared in § 11 that the rights of persons not parties to the proceeding shall not be prejudiced by the declaration of the court and specifically provided that the trial court "may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." Article 2524–1, § 6. Both of these considerations, i.e., the prejudicial effect on the rights of absent persons, and the adequacy of the judgment rendered in their absence are listed in subdivision (b) of Rule 39 as relevant considerations for the trial court.

■ We reject any construction of Article 2524–1 which would make the decision of the trial court to proceed in the absence of a party (whose interests could be affected by the declaration) fundamental error in all cases. Such an extreme construction would operate to unduly limit the availability of relief between parties having a justiciable controversy capable of complete determination without seriously prejudicing the rights of others. Further it would be hos-

tile to § 12 of Article 2524–1 which declares that the Act should be liberally construed so as to afford relief from uncertainty and insecurity. Finding no substantive inconsistency between Article 2524–1 and Rule 39, we hold that Rule 39 applies to actions brought under the Declaratory Judgments Act and accordingly disapprove of contrary statements in *Crickmer v. King, supra.*

■ Viewed from this perspective it seems clear that the presence of the landowners was not so crucial that the judgment rendered in their absence should be vacated. All of the parties to the July 11, 1966 contract were before the court; the controversy between them was capable of complete and final resolution, and no proper complaint concerning their nonjoinder was made in the trial court. *See, Cooper v. Texas Gulf Industries, Inc., supra,* at 204. Most importantly, the landowners were not parties to the 1966 contract; they were merely parties to contracts made subject to that prior agreement. Clearly their interest was not one which made their presence indispensable. *Triton Oil & Gas Corp. v. E. W. Moran Drilling Co.,* 509 S.W.2d 678 (Tex. Civ.App.1974, writ ref'd n. r. e.); *McNeil v. McLain,* 272 S.W.2d 573 (Tex.Civ.App.1954, no writ); 3A Moore, Federal Practice ¶ 19.-10, at pp. 2349–2350 (2d ed. 1974) (discussing Federal Rule 19, virtually identical to Rule 39); 7 Wright and Miller, Federal Practice and Procedure § 1613 at pp. 134–135 (1972).

Our holding that the trial court had jurisdiction to render judgment makes it necessary for us to decide those issues which the Court of Civil Appeals did not reach, including those dealing with the validity and status of the 1966 contract between Utilities and Authority.

■ The primary issue is the duration of the 1966 contract. The rule which we regard as controlling is that contracts which contemplate continuing performance (or successive performances) and which are indefinite in duration can be terminated at the will of either party. *See Kennedy v. McMullen,* 39 S.W.2d 168, 174 (Tex.Civ.App. 1931, writ ref'd); *Tanenbaum Textile Co. v.*

*Sidran*, 423 S.W.2d 635, 637 (Tex.Civ.App. 1967, writ ref'd n. r. e.); *Sturgeon v. City of Paris*, 58 Tex.Civ.App. 102, 122 S.W. 967, 970 (1909, writ ref'd); *Byrd v. Crazy Water Co.*, 140 S.W.2d 334, 336 (Tex.Civ.App.1940, no writ); Tex.Bus. & Comm.Code Ann. § 2.309 (1968); 1 Williston On Contracts § 38 at 115–116 (3d ed. 1957).

We are not unmindful of the fact that in dealing with exclusive franchise or distributorship agreements, which are indefinite in duration and which contemplate the expenditure of substantial sums of money or other investments by one of the parties preparatory to or in accordance with his performance under the contract, the courts often imply a term of reasonable duration during which time the agreement is not terminable at will. *See Hall v. Hall*, 158 Tex. 95, 308 S.W.2d 12 (1957); 9 Williston On Contracts § 1017A at 150–152 (3d ed. 1967); Gellhorn, Limitations on Contract Termination Rights—Franchise Cancellations, 1967 Duke L.J. 465, 479–480; Annot., 19 A.L.R.3d 196 at 319–324 (1968). We need not decide whether the 1966 agreement falls within this class of contracts for it simply cannot be implied in this case, for reasons set forth below, that the parties agreed to be bound for a reasonable period of time.

■ Authority is a conservation and reclamation district created pursuant to Article 8280–280 Tex.Rev.Civ.Stat.Ann. (Cum. Supp.1965) as authorized by Article XVI § 59 of the Texas Constitution. As such, it constitutes a political subdivision of the State and operates as a governmental agency performing governmental functions. *Willacy County Water Control and Improvement District No. 1 v. Abendroth*, 142 Tex. 320, 177 S.W.2d 936 (1944); *Puryear v. Red River Authority of Texas*, 383 S.W.2d 818 (Tex.Civ.App.1964, writ ref'd n. r. e.). Among the powers expressly granted Authority under § 7 of Article 8280–280 is the power to "purchase and construct . . . or otherwise acquire and accomplish by any and all practical means, waterworks systems [and] sanitary sewer systems, . . . and to operate and maintain same, and to

sell water or other services, and to fix rates therefore . . . ." It is further provided that "Authority may exercise any of the rights, powers and authorities granted by this Act within or without the boundaries of Authority . . . ." Authority could not, by contract or otherwise, bind itself in such a way as to restrict its free exercise of these governmental powers, nor could it abdicate its governmental functions, even for a "reasonable time" (found by the trial court to be 14 years and contended by Utilities to be much longer). *Banker v. Jefferson County Water Control & Improvement District No. 1*, 277 S.W.2d 130, 134 (Tex.Civ. App.1955, writ ref'd n. r. e.); *see Texas Power & Light Co. v. City of Garland*, 431 S.W.2d 511 (Tex.1968); *City of Beaumont v. Calder Place Corp.*, 143 Tex. 244, 183 S.W.2d 713, 715–716 (1944); *City of Brenham v. Brenham Water Co.*, 67 Tex. 542, 4 S.W. 143, 149–152 (1887). Unless the contract is treated as terminable at will, it would have this impermissible effect and would, as Authority contends, be void ab initio—a result the parties could not have intended.

Similar agreements were held invalid in *Fidelity Land & Trust Co. of Texas v. City of West University Place*, 496 S.W.2d 116 (Tex.Civ.App.1973, writ ref'd n. r. e.) and *Banker v. Jefferson County Water Control & Improvement District No 1, supra*. In *Fidelity Land & Trust Co.*, a predecessor in title to the plaintiff, Fidelity, executed a deed in 1942 granting the City a sewer line easement across his property, adjoining but outside of the corporate limits of the City. As part of the consideration the landowner, his "successors and assigns" were granted the right to make connections without charge to the City sewer system and to receive service under the same terms as inhabitants of the City. When Fidelity was denied its request in 1968 to make a connection it brought suit for breach of contract. The court denied relief, holding that the agreement operated to inhibit the municipality in its discretionary control over a governmental function (i.e., the operation of a sewer system) and was therefore unenforceable.

In *Banker v. Jefferson County Water Control & Improvement District No. 1*, the plaintiff pursuant to a contract with the Jefferson County Water Control & Improvement District No. 1, extended at his own expense a water line from the then existing boundary of the District to a point inside the Lyndale Addition, an adjacent subdivision. The contractual term at issue in the suit provided that the District would have no right to extend service to others outside of the Lyndale Addition without authorization by the plaintiff. The District subsequently annexed the entire area. The plaintiff brought suit to recover for breaches of contract by the District alleged to have occurred both before and after the annexation. The court, noting that the District was authorized by statute to sell any surplus water to lands in the vicinity, held that the District could not bargain away its governmental power to determine to whom and under what conditions it would sell its surplus water.

■■■ One of the governmental functions of Authority is the determination of whether, on any particular date, it is in the best interests of all of its customers and the public in general, to extend water and sewer service to a particular person or entity. The agreement between Utilities and Authority *obligates* Authority to meet all water and sewage treatment needs for Utilities. Additionally, it precludes Authority from extending these services directly to the landowners in the 100 acre tract, under terms and rates that it deems best. The water and sewage rates charged the landowners by Utilities, for example, are not governed by the Utilities-Authority agreement. Thus the agreement has the effect of potentially controlling and embarrassing Authority in the exercise of its governmental powers. We hold that the agreement was not one binding on the parties for a reasonable period of time but was rather terminable at will be either party and was in fact terminated by Authority's letter of May 2, 1975.

We have carefully considered all of the points of error of all of the parties. Those points of error not discussed herein are overruled.

The Court of Civil Appeals is correct in declaring that Clear Lake Apartments, Inc. is not bound by the exclusive service provision in the November 21, 1967 contract between North Clear Lake Development Corp. and Clear Lake Utilities Co. The Court of Civil Appeals is correct in directing Clear Lake Utilities Co. to take nothing in its action against Clear Lake Water Authority and the City of Pasadena for conspiracy and tortious interference with its contractual relations. The judgment of the Court of Civil Appeals is incorrect in remanding the remaining issue to the trial court for the addition of parties; the judgment is in that respect here modified to declare the contract of July 11, 1966 between Clear Lake Utilities Co. and Clear Lake Water Authority to have been valid and binding on the parties until terminated by Clear Lake Water Authority by its notice of May 2, 1975. As modified, the judgment of the Court of Civil Appeals is affirmed.