SAGE STREET ASSOCIATES, 3525 Sage Street Associates, and Marvin B. Myers, Appellants,

v.

NORTHDALE CONSTRUCTION COMPANY, Robert B. Evans and Federal Insurance Company, Appellees.

No. 14–90–00311–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 8, 1997.

Rehearing Overruled Dec. 23, 1997.

---

**8.** Appellants did not challenge prospective juror    Kahle for cause.

David T. Harvin, Gregory N. Jones, Betty R. Owens, Houston, for appellants.

William M. Coats, Yocel Alonso, Richard F. Greenleaf, Geoffrey H. Bracken, W. James Kronzer, Leslie C. Taylor, David M. Gunn, Houston, for appellees.

Before MURPHY, C.J., and DRAUGHN and ELLIS, JJ.*

* Former Justices Joe L. Draughn and George T. Ellis sitting by assignment.

## OPINION ON REMAND

MURPHY, Chief Justice.

This case comes before us on second remand to determine the factual sufficiency of the evidence to support the jury's finding of damages in favor of appellee Northdale Construction Company. We find the evidence is factually insufficient and reverse and remand for a new trial.

Sage Street Associates, through its general partner, Marvin B. Myers, wanted to build a high-rise apartment building for which financing from the Department of Housing and Urban Development (HUD) was available if the construction price did not exceed $13.5 million. In January 1984, Myers negotiated with Northdale's president Robert B. Evans and offered to guarantee Northdale a $760,000 profit from the job if Northdale would sign a contract with a nominal price of $13.5 million. Evans asked what would happen if costs on the project ran higher than $13.5 million. Myers explained that because Northdale's fee was "sacred," it would still receive the cost of the work plus a $760,000 fee. He also indicated that after HUD approval at the $13.5 million base price, the project could be expanded and the price increased through change orders. Throughout the appellate life of this case, no court has been able to address the questionable propriety of the contract's financing arrangement, which used a HUD funding program designed for construction of low to moderate income housing to build a luxury high-rise condominium. By agreement of the parties, the trial judge instructed the jury not to consider the legality of the HUD financing of the project.

On March 7, 1984, Northdale and Sage Street entered into a construction agreement. The contract authorized monthly payment requests by Northdale for work performed. Sage Street was to pay in each installment for only ninety percent of the work done, until the overall project was ninety percent complete, at which point Sage Street was to cooperate with Northdale in obtaining HUD approval to reduce the retention to five percent.

Approximately three weeks later, in an action that Myers told Evans was strictly to accommodate HUD, Sage Street and Northdale executed a second contract, also known as the HUD contract. The HUD contract provided that Sage Street would pay to Northdale the actual cost of construction as defined therein, plus a fee of "$NONE," and that in no event would the total amount payable exceed $13,535,000. The HUD contract did not refer to the earlier contract, and provided that it constituted the entire agreement between the parties.

During the course of construction, various disputes arose between Sage Street and Northdale, primarily over how payments for design changes and extra work were to be handled. In September 1985, Northdale stopped or sharply reduced work on certain extra items for which it had not received payment. In November 1985, when the project was approximately ninety percent complete, and after receiving somewhat more than $11 million, Northdale stopped work and was terminated as contractor by Sage Street. Sage Street then hired Cahaba Construction Company to finish the project.

Northdale and Sage Street filed separate suits that were consolidated for trial. The jury found that Sage Street had wrongfully terminated Northdale and that Northdale was owed $2,491,110 pursuant to the contract for the work it performed, its overhead, and its profits, if any.

On original submission, this court affirmed the jury's damage award, holding the evidence supported a damage figure greater than the jury's finding. *Sage Street Associates v. Northdale Const. Co.,* 809 S.W.2d 775, 778 (Tex.App.—Houston [14th Dist.] 1991). The Texas Supreme Court remanded the case, instructing this court to determine whether the evidence was factually sufficient to support the jury's award of damages. Specifically, the supreme court instructed this court to determine (1) whether the $760,-000 fee claimed by Northdale was an addition to the contract price or was considered a part of the contract price and (2) whether the evidence was sufficient to support the damage award under the theory submitted to the jury. *Sage Street Associates v. Northdale Const. Co.,* 863 S.W.2d 438, 447 (Tex.1993).

On remand, this court held the evidence was factually sufficient to support a finding that Sage Street owed Northdale the $760,-000 even though Northdale did not complete the project. *Sage Street Associates v. Northdale Const. Co.,* 889 S.W.2d 400, 402 (Tex. App.—Houston [14th Dist.] 1994). We further held the evidence was factually sufficient to support the jury's award of damages. *Id.* at 403. The supreme court has now remanded the case to this court to again determine the factual sufficiency of the evidence to support the jury's award of damages. *Sage Street Associates v. Northdale Const. Co.,* 937 S.W.2d 425, 428 (Tex.1996). The court held that our initial determination that Sage Street owed Northdale the $760,-000 fee was resolved by this court's second opinion. 937 S.W.2d at 427. The court held, however, that we did not correctly review the factual sufficiency of the jury's award of damages.

The supreme court recognized that, according to the measure of damages submitted to the jury, Northdale is entitled to recover its unpaid costs, overhead and profits for work performed, less whatever more than the contract price it would have cost to complete the project. The court determined the formula to be used in calculating the damages due Northdale is as follows: [1]

| | | |
|---|---|---|
| 1. | Contract price | 13,500,000 |
| 2. | Amount paid Northdale | 11,000,000 |
| 3. | Cost to complete construction | 2,000,000 |
| 4. | Balance remaining under contract | 500,000 |
| 5. | Northdale's unpaid costs, etc. | 2,000,000 |
| 6. | Northdale's damages: lesser of lines 4 and 5 | 500,000 |

The supreme court pointed out that this court did not include item 3 in our calculation of damages. Therefore, our task, on second remand, is to determine the factual sufficiency of the evidence to support the jury's award of damages when the cost to complete construction is included in the formula.

In reviewing a factual insufficiency challenge, the appellate court must consider all of the evidence in the record, both supporting and contrary to the judgment. *Plas–Tex.,*

---

1. The numbers used in the formula are round numbers used for demonstrative purposes only.

*Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). After considering and weighing all the evidence, the court should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). When reversing on factual insufficiency grounds, the courts of appeals should detail the relevant evidence and clearly state why it is insufficient so the supreme court might determine if the requirements of *In re King's Estate* have been satisfied. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986).

The supreme court determined that Sage Street bore the burden of proof on the issue of excess cost to complete. As noted by the supreme court, the only evidence in the record with regard to the excess cost to complete came from Sage Street. Sage Street's principal, Marvin Myers, testified that he spent $4,064,348.62 to complete the construction of the building after Northdale was terminated. He testified that he calculated his cost to complete by including only charges traceable to Northdale. Myers testified that the total cost to complete the building was $15,604,983, so that it cost $2,069,983.23 over the cost of the contract price. To that figure, Myers added interest rate charges, loan extension fees because of delays, additional architectural bills for work to aid completion, expenses of personnel, change orders, credits due that were not received, security for the building, building maintenance, interest on the equity from Dean Witter, and real estate taxes. Those additions brought the total to $4,064,348.62.

Federal Insurance Company presented an expert witness, James Gribble, who testified that the excess cost to complete was $2,881,-520. Gribble testified that his calculations were based on the cost to complete only the work that Northdale would have been required to do under the contract. Gribble's calculations were as follows:

| | |
|---|---|
| Spent by Myers to complete project | $15,604,983 |
| Less payments to Northdale | <11,103,204> |
| | 4,501,779 |
| Less Myers overcharges | <1,620,259> |
| Myers cost applicable to Northdale | $ 2,881,520 |

Northdale offered no evidence on the excess cost to complete. If the jury believed either of the above witnesses, Northdale's damages would not have been more than a few hundred thousand dollars, much less than the jury's damage award. As stated by the supreme court:

> To find damages as the jury did, it must have concluded that Sage Street paid only about $350,000 more than the contract price (plus extras) and fee to finish the project. Since Northdale offered no evidence on this issue, the question is, in effect, whether such a conclusion would be against the great weight and preponderance of the only evidence in the case, i.e., the evidence offered by Sage Street. If the jury's conclusion was reasonable, then judgment on the verdict should be affirmed. If the jury's conclusion was unreasonable, then the case must be retried.

937 S.W.2d at 428.

Taking into consideration only the work Northdale was required to complete, we find no evidence in the record to show that Sage Street spent any less than $2,881,520 to complete the construction project. Therefore, reviewing all of the evidence with regard to the excess cost to complete and following the supreme court's guidance, we conclude it was not reasonable for the jury to disregard the only evidence on the excess cost to complete. Therefore, the evidence is factually insufficient to support the jury's damage award.

The judgment of the trial court is reversed and the cause is remanded for a new trial.