**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 98-10564

C & H Nationwide, Inc.,

Plaintiff-Counter
Defendant-Appellee,

VERSUS

FLOYD R. ADAMS, ET AL.,

Defendants,

FLOYD R. ADAMS; RAYMOND BILLINGTON; NOELINE BILLINGTON; DAVID B. BOLES; RALPH BOSTON; CHARLOTTE BOSTON; JUANITA BULLOCK; JOHN T. CLARK; CURLEY HOE TRUCKING, INC.; DAVID DOTTERWEICH; G.R. ELLISTON; LEON FLOWERS, JR.; J.L. FOWLER; HAROLD GAINES; HOWARD L. GARDNER; JOHN HECKS; JAMES KILPATRICK; JACKIE KILPATRICK; DELVIN LA DUKE; VONDA LAMB; ROBERT E. LAND, JR.; VIRGINIA MARTIN; RICHARD G. MCKENNEY; JOYCE MCLEMORE; BARBARA JEAN MILLER; WILBUR NEWSOME; CHARLES P. PORTER; RICHARD PUCKETT; LEON S. RABY; ANDREW RACHOY; ROBERT READ; ADELA READ; DONALD ROTH; LOU J. SMITH; LEE A. TRACY; SHIRLEY S. TRAVIS; BETTY E. WILLIAMS, Estate of; JAMES E. WINSLOW; THOMAS YORK; JAMES LAMB; GEORGE MARTIN,

Defendants-Appellants,

JAY MCDONALD; JOHN F. BONANNO; JIMMY BRADDOCK; KARIN BRADDOCK; RODERICK A. FONTANELLA; WESLEY KENNEMER; WILLIAM R. MULLEN; KEITH S. MUNDWILLER; ALBERT PEABODY; THOMAS SHROPSHIRE; ROBERT KELVIN SMITH; FRED W. VOSS,

Defendants-Counter
Claimants-Appellants.

Appeal from the United States District Court
for the Northern District of Texas
(3:90-CV-1510-D)

November 2, 1999

1

Before DeMOSS and PARKER, Circuit Judges and LAKE, District Judge.[*]

ROBERT M. PARKER, Circuit Judge:[**]

Defendants/counter-claimants appeal various aspects of the judgment in this declaratory judgment and breach of contract action. We affirm in part, reverse in part and remand.

FACTS AND PROCEDURAL HISTORY

C & H Nationwide, Inc. ("C&H") was a motor carrier operating more than 850 tractors and 4,500 trailers. Appellants (referred to collectively as "owner-operators") leased trucking equipment and drivers to C&H. The owner-operators contracted separately with C&H, but entered into substantially identical written contracts that provided:

1. Owner-operators would receive 67% of the truck's revenue;
2. C&H would make every reasonable effort to make freight available; and
3. Either party could cancel the contract on thirty days' written notice.

In 1987, C&H's parent company attempted to sell C&H as a going concern. Those attempts failed and C&H was shut down on December 27, 1988 without prior notice to the owner-operators.

During the late 1980s, many of C&H's shipments were billed at negotiated rates rather than the higher "tariff rates" with the blessing of the ICC. After the shutdown, the Fifth Circuit ruled that motor carriers must use tariff rates instead of negotiated

---

[*]District Judge of the Southern District of Texas, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

rates. *See Supreme Beef Processors v. Yaquinto*, 864 F.2d 388 (5th Cir. 1989). Accordingly, after the shutdown, C&H conducted an audit of its past freight bills and sent out undercharge claims. Some of the charges were paid, some settled, some were uncollectible, some determined invalid and some were disallowed by courts. A group of owner-operators made demand upon C&H, pursuant to their contracts, for 67% of the total undercharge claims, approximately $4.7 million, arguing that the risk of loss on uncollected accounts receivable, as well as collection costs had never before been deducted from their percentage of revenues. C&H refused the demand, calculating the payment due to owner-operators on the undercharge claims at 67% of the net collected revenues, i.e., collected revenues minus collection costs.

In March 1990, Appellants filed suit in Texas court seeking damages for C&H's breach of the contract provision requiring 30 days notice of closing and for failure to pay them 67% of the total undercharge claims. Appellants agreed to dismiss that lawsuit to pursue settlement negotiations on the condition that C&H would give owner-operators ten days to refile it if settlement negotiations were unsuccessful. Settlement negotiations broke down and C&H filed this action seeking a declaration of the parties' rights and liabilities under the contracts, including a determination of what portion of the undercharge claims were due the owner-operators. The owner-operators counterclaimed against C&H for, *inter alia*, breach of contract. After a bench trial, the magistrate judge entered a declaratory judgment awarding the owner-operators damages

and post judgment interest and awarding C&H costs and attorney fees in the amount of $105,884.05.

                                DISCUSSION

The owners-operators appeal, challenging the attorney fee award in favor of C&H, seeking to increase their recovery by increasing the damages awarded and adding prejudgment interest and challenging the sanctions imposed by the district court for discovery abuse.

Owner-operators begin with the contention that the two judgments are not final because they are ambiguous. We find no merit in this contention. The errors in the judgments identified on appeal are clearly clerical errors susceptible to correction pursuant to Federal Rule of Civil Procedure 60(a).

Owner-operators have identified no error by the district court that merits reversal of the amount of damages awarded on their breach of contract claims, undercharge claims or prejudgment interest claims. Further, we find no basis for reversing or modifying the sanctions imposed due to discovery abuses.

Finally, the owner-operators challenge the attorney fees awarded C&H. There is no authority for an award of attorney fees in 28 U.S.C. § 2202, the federal declaratory judgment statute. *See Self-Insurance Inst. of Am., Inc. v. Korioth*, 53 F.3d 694, 697 (5th Cir. 1995). However, C&H also pleaded for declaratory relief pursuant to Texas's Declaratory Judgements Act, TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001 - 37.011 (Vernon 1997), which specifically allows for the award of costs and attorney fees. *See* § 37.009.

4

The grant of attorney fees in a Texas declaratory judgment action is reviewed for clear abuse of discretion. *See Hasty Inc. v. Inwood Buckhorn Joint Venture*, 908 S.W.2d 494, 502 (Tex. App.-Dallas 1995, writ denied).

Owner-operators argue that C&H did not bring a proper declaratory judgment action under Texas law because all parties were not joined. The Texas declaratory judgment statute requires that "all persons who have or claim any interest that would be affected by the declaration must be made parties." § 37.006. The requirement to join all parties affected is mandatory. *See Clear Lake City Water Auth. v. Clear Lake Utilities Co.,* 549 S.W.2d 385, 389 (Tex. 1977). "This is the clear import of the language, the construction supported by the great weight of authority, and the apparent intent of the drafters." *Id.* It is undisputed that all 850 former C&H drivers had similar interests in the proceeds of the undercharge claims. Rather than joining all similarly situated parties, C&H sued only those owner-operators that had previously filed suit in state court, calling into question the validity of characterizing this suit as a Texas declaratory judgment action.

C&H responds that they have complied with the mandatory joinder requirement of the Texas statute because each truck was under separate contract and they sought a declaration of rights as to each of the "handful" of individuals who disputed their contractual rights by bringing suit in state court.

C&H's distinction does not comport with the plain language of the statute. The statute is not limited to those who have claimed

5

a disputed interest, but specifically includes any who have such an interest whether or not they have made a claim. We conclude that the suit was not validly brought under the Texas Declaratory Judgments Act and C&H is not entitled to recover its attorney fees under that statute. Finding no other basis to support the award, we hold that the magistrate judge abused his discretion in awarding attorney fees to C&H.

CONCLUSION

Based on the foregoing, we reverse the award of attorneys fees and affirm the judgment in all other respects.

AFFIRMED in part, REVERSED in part.