**SAGE STREET ASSOCIATES, 3525 Sage Street Associates, and Marvin B. Myers, Appellants,**

v.

**FEDERAL INSURANCE COMPANY and Rampart Capital Corporation, Appellees.**

No. 01–98–00921–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 12, 2001.

Rehearing Overruled May 3, 2001.

See also 956 S.W.2d 583.

David T. Harvin, Betty R. Owens, Kathleen Bone Spangler, Houston, for Appellant.

William M. Coats, Houston, Clinard J. Hanby, The Woodlands, Nancy Manderson, Stephen G. Scholl, Houston, for Appellee.

Panel consists of Justices MIRABAL, NUCHIA, and PRICE.*

## OPINION

FRANK C. PRICE, Justice.

Sage Street Associates, 3525 Sage Street Associates, and Marvin B. Myers, appellants, collectively referred to herein as Sage, appeal summary judgment in favor of Federal Insurance Company and Rampart Capital Corporation (successor in interest to NBC Bank), appellees.

### Background

This case has a long and convoluted factual and procedural history. Northdale Construction Company contracted to build a high-rise apartment building for Sage. Sage terminated Northdale before construction was complete. Northdale and Sage each brought breach of contract actions against the other, which were consolidated for trial. That lawsuit is referred to herein as Northdale v. Sage. Northdale

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

won a jury verdict and, on December 18, 1989, the trial court entered judgment awarding Northdale $2,491,110 plus interest, costs, and attorney's fees. Sage appealed. The court of appeals affirmed the judgment.[1] Sage sought a writ of error, and the supreme court remanded the case to the court of appeals for review of the sufficiency of the evidence to support the damages award.[2] The court of appeals again affirmed the judgment.[3] Sage again sought writ of error, and the supreme court again remanded to the court of appeals for further analysis of the damages award.[4] In 1997, the court of appeals reversed the damages award and remanded the case to the trial court for a new trial on damages.[5]

Federal Insurance Company provided payment and performance bonds for Northdale in connection with its construction contract with Sage. Federal was a third party defendant in Sage's suit against Northdale. Federal also filed its own suit against Northdale in the United States District Court for the Southern District of Texas.

In August 1989, Northdale and Federal settled the federal lawsuit. Northdale assigned to Federal 25% of the proceeds in excess of $500,000 from the Northdale v. Sage lawsuit. The settlement required Northdale to use its best efforts to prosecute the Sage lawsuit, but did not require Northdale to get Federal's approval before entering into any settlement agreement.

Rampart Capital Corporation is the successor-in-interest to NBC Bank Houston, N.A. For clarity, we will refer to Rampart and NBC Bank as Rampart/NBC Bank. In 1986, Rampart/NBC Bank provided financing to Northdale secured by a 100% interest in the Northdale v. Sage lawsuit. In 1987, Rampart/NBC Bank sued Northdale and its principal, Robert Evans. Rampart/NBC Bank also intervened in the Northdale v. Sage lawsuit.

In July 1989, Rampart/NBC Bank settled its lawsuit against Northdale. Northdale agreed to pay Rampart/NBC Bank 50% of the proceeds from the Northdale v. Sage lawsuit, less $20,000 attorney's fees. Northdale was required to use its best efforts to prosecute the Sage lawsuit, and to secure the bank's approval in order to settle for less than $300,000.

In September 1996, before Northdale's approximately $2.5 million judgment was reversed and remanded for a new trial by the court of appeals, Northdale assigned its interests in the December 18, 1989 judgment and its causes of action in Northdale v. Sage to Dean Witter Realty, Inc. for $950,000. Dean Witter was Sage's lender on the construction project that gave rise to the Northdale v. Sage lawsuit.

In October 1996, Dean Witter, as Northdale's assignee, settled the Northdale v. Sage lawsuit for $300,000. In accordance with the Rampart/NBC Bank settlement, Dean Witter tendered $130,000 (half of $300,000 less $20,000 attorney's fees) to Rampart/NBC Bank. Because the settle-

1. *Sage Street Assoc. v. Northdale Const. Co.,* 809 S.W.2d 775 (Tex.App.—Houston [14th Dist.] 1991).

2. *Sage Street Assoc. v. Northdale Const. Co.,* 863 S.W.2d 438 (Tex.1993).

3. *Sage Street Assoc. v. Northdale Const. Co.,* 889 S.W.2d 400 (Tex.App.—Houston [14th Dist.] 1994).

4. *Sage Street Assoc. v. Northdale Const. Co.,* 937 S.W.2d 425 (Tex.1996).

5. *Sage Street Assoc. v. Northdale Const. Co.,* 956 S.W.2d 583 (Tex.App.—Houston [14th Dist.] 1997, pet. denied).

ment was for less than $500,000, Dean Witter tendered nothing to Federal. Rampart/NBC Bank and Federal refused to acknowledge the settlement.

Sage filed the instant action seeking a declaratory judgment that the settlement agreement between Dean Witter and Sage was valid and settled all outstanding claims in the Northdale v. Sage lawsuit. Appellees answered, and Rampart/NBC Bank filed a counterclaim seeking a declaratory judgment that the settlement was not valid. All parties moved for summary judgment.

The trial court awarded summary judgment to Rampart/NBC Bank and Federal on the grounds that the assignment from Northdale to Dean Witter was void and thus the settlement was not valid.

### Issues Presented

Appellants contend that the trial court erred in granting summary judgment in favor of appellees because (1) Northdale and Dean Witter were indispensable parties to any judgment declaring the assignment void; (2) the assignment was valid and enforceable; and (3) the settlement agreement between Dean Witter and Sage was valid. Appellants further urge that summary judgment should be rendered in appellant's favor for reasons (2) and (3) above.

### Were Northdale and Dean Witter Indispensable Parties?

The Supreme Court has ruled the proper way to challenge a defect of parties is by verified plea. *Allison v. National Union Fire Ins. Co.*, 703 S.W.2d 637, 638 (Tex.1986). Although the relief sought by Sage would not prejudice Northdale's or Dean Witter's rights, so that there was no defect of parties in Sage's original petition, the potential defect in the parties was apparent upon the filing of Rampart/NBC Bank's counterclaim and motion for sum-

mary judgment, which asserted that the assignment was void. Sage did not file a verified plea complaining of the absence of Northdale and Dean Witter or attempt to join them.

■ Although Sage did not file a verified plea challenging the nonjoinder of Northdale and Dean Witter, this Court may review the trial court's judgment rendered in the absence of Northdale and Dean Witter for fundamental error. *Id.*; *see Clear Lake City Water Auth. v. Clear Lake Util. Co.*, 549 S.W.2d 385, 389 (Tex. 1977).

The joinder of parties is governed generally by Rule 39 of the Texas Rules of Civil Procedure and specifically for declaratory judgment suits by Texas Civil Practice and Remedies Code section 37.006.

Texas Rule of Civil Procedure 39 provides:

> (a) Persons to be Joined if Feasible. A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.

The Declaratory Judgment Act provides:

> (a) When declaratory relief is sought, all persons who have or claim any

interest that would be affected by the declaration must be made parties. A declaration does not prejudice the rights of a person not a party to the proceeding.

TEX. CIV. PRAC. & REM.CODE § 37.006(a) (Vernon 1997). The supreme court has held that the failure to comply with the mandate of section 37.006(a) to join all persons who have an interest that would be affected by the declaration does not uniformly constitute a jurisdictional defect. *Clear Lake City Water Auth.*, 549 S.W.2d at 390. In *Clear Lake City Water Auth.*, the supreme court rejected any construction of the Declaratory Judgment Act that would make the decision of the trial court to proceed in the absence of a party whose interests could be affected by the declaration fundamental error in all cases, because to do so would unduly limit the availability of relief between the parties already joined and would be contrary to the dictate that the Declaratory Judgment Act be liberally construed. *Id.*

■ However, in *Clear Lake City Water Auth.*, the supreme court did not eliminate fundamental error in those cases where a judgment rendered in the absence of certain parties clearly prejudices the absent parties' rights. There is no litmus paper test for determining whether a particular party is indispensable. *Id.* Therefore, this Court must examine the surrounding facts and circumstances of the case to determine if the interests of an absent party will be prejudiced and if an adequate judgment can be rendered for the parties before the court. *Id.; see Vondy v. Commissioners Court of Uvalde Cty.*, 620 S.W.2d 104, 106–7 (Tex.1981).

■ Appellees argue that Northdale and Dean Witter are not necessary parties because the trial court's ruling that the assignment is void is "incidental" to the declaratory judgment, and does not prejudice Northdale's and Dean Witter's rights because it is not binding on them. Although it is true that section 37.006 expressly provides that a declaration does not prejudice the rights of a person not a party to the proceeding, it is undeniable that the trial court's ruling would prejudice Northdale and Dean Witter. If Sage, Federal, and Rampart/NBC Bank are bound by the declaration, it will be impossible for Dean Witter to settle or prosecute the Northdale v. Sage lawsuit. Dean Witter will be deprived of the benefit of its bargain with Northdale and will undoubtedly want its money back from Northdale, thus also depriving Northdale of the benefit of its bargain.

Significantly, appellees have not presented this Court with any case that upholds a trial court's judgment that a contract was *void* in the absence of *both* parties to the contract. Although there may be a situation in which to do so is not fundamental error, either because the parties to the contract are not prejudiced or for some other reason we cannot now fathom, we do not think this is such a case.

Given the extensive procedural history of this case, there is no doubt that Northdale and Dean Witter could be joined in the declaratory judgment action. There is no compelling reason for the trial court to proceed to judgment in their absence. Under the specific facts and circumstances of this case, we believe Northdale and Dean Witter were jurisdictionally indispensable parties and must be joined before the trial court can render a judgment declaring the assignment between them void.

Having held that Northdale and Dean Witter were indispensable to the trial court's summary judgment in favor of appellees, we sustain Sage's first point of error and reverse and remand the case to the trial court.

Although we have stated that Northdale and Dean Witter were not necessary to a judgment granting the declaratory judgment sought by Sage, we do not reverse and render judgment in Sage's favor. The assignment and settlement agreement in this case raise grave concerns. In the end, Dean Witter, Sage's lender, paid $950,000 for a lawsuit against Sage, and promptly settled the lawsuit for $300,000, the minimum amount for which it could settle the case without Rampart/NBC Bank's approval. Northdale pocketed very close to the same amount it would have if its approximately $2.5 million judgment were upheld and collected and it performed its settlement agreements with Federal and Rampart/NBC Bank.[6]

Concerns of increased and distorted litigation led the supreme court to find the assignment at issue in *State Farm Fire and Cas. Co. v. Gandy*, 925 S.W.2d 696, 711–13 (Tex.1996), void as against public policy and to rule "Mary Carter" agreements unenforceable in *Elbaor v. Smith*, 845 S.W.2d 240, 249 (Tex.1992). Those same concerns are present in this case.

The assignment here distorted the legal positions of the parties, giving the nominal plaintiff, Dean Witter, incentive to work with, not against, the defendant Sage (Dean Witter's borrower), to the detriment of the remaining parties, Federal and Rampart/NBC Bank. Rampart/NBC Bank presented uncontroverted evidence in support of its summary judgment motion that Dean Witter was Sage's lender for the construction project that was the subject of the Northdale v. Sage lawsuit; Dean Witter was named as the syndicator in certain Sage partnership documentation;

the trustee of the deed of trust on the property was a managing director of Dean Witter; and a related company, Dean Witter Realty Credit Corporation, was the original deed of trust beneficiary for the property. The same lawyer has represented Dean Witter and Sage regarding the assignment, the settlement, at trial, and on appeal. In essence, the assignment destroyed the adversary relationship between the parties to the Northdale v. Sage lawsuit. The assignment had the effect of changing Sage's status in the lawsuit from that of a defendant potentially having to pay a $2.5 million judgment, to that of plaintiff and defendant having to pay only a token amount to settle its liability.

The Federal settlement agreement with Northdale, and the Rampart/NBC Bank settlement agreement with Northdale, both required Northdale to use its best efforts to prosecute or settle the Northdale v. Sage lawsuit. Clearly, the settlement agreements contemplated that the Northdale v. Sage lawsuit would be resolved through an adversarial proceeding or an arms-length settlement negotiation. Although Federal and Rampart/NBC Bank had no guarantee regarding the ultimate recovery they would receive as a result of their settlements, the assignment destroyed the value of the settlement agreements by ensuring they would receive very little or nothing at all.

Furthermore, while the assignment laid the groundwork for the purported settlement agreement between Sage and Dean Witter, the fact that Sage found it necessary to file the instant suit is testament to the fact that the assignment had the very

---

6. The judgment recited that Rampart/NBC Bank would recover 50% of the total amount recovered by Northdale ($2,491,110 principal plus attorney's fees and interest totaling $929,676.50), less $20,000, i.e., $1,690,393.25. The judgment further recited that Federal would recover 25% of all sums in excess of $500,000 recovered by Northdale, i.e., $730,196.63. Under this scenario, Northdale would be left with $1,000,196.62, less its collection costs.

real effect of spawning, not settling, litigation.

### Conclusion

The trial court's summary judgment in favor of Federal and Rampart/NBC Bank is reversed, and the cause is remanded to the trial court so that Northdale and Dean Witter can be joined as parties.