

# KEN PAXTON
### ATTORNEY GENERAL OF TEXAS

February 3, 2016

The Honorable Jane Nelson
Chair, Committee on Finance
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. KP-0063

Re: Whether a water supply district may assign to another district certain duties and rights, including approval of the annual budget and contracting for certain services (RQ-0045-KP)

Dear Senator Nelson:

You ask whether a water supply district may assign to another district certain duties and rights under an operating agreement, including approval of aspects of the annual budget and contracting for certain services.[1] Your questions concern an agreement between Denton County Fresh Water Supply District No. 1-A ("District 1-A") and Denton County Fresh Water Supply District No. 1-B ("District 1-B"). Request Letter at 1.

You inform us that the original district that became District 1-A and District 1-B was approved by the voters as a fresh water supply district in 1983 and subsequently converted into a water control and improvement district subject to chapters 49 and 51 of the Water Code. *Id.* You state that the original district was divided by election in 1995 into the present District 1-A and District 1-B. *Id.* You further state that the districts provide water and sewer services pursuant to agreements with the Upper Trinity River Authority and the City of Lewisville (the "City"). *Id.* In connection with these services, you inform us, the districts entered into an operating agreement "to provide for the orderly operation and maintenance of the water and sewer facilities within the Districts" and which assigns District 1-A operational responsibility. *Id.* at 1–2. You state that the operating agreement "and this operational responsibility has led to continuing disputes between the Districts." *Id.* at 2.

Your overriding concern is whether certain terms in the operating agreement impermissibly contract away certain of District 1-B's legislative functions. *Id.* First, you state that the operating agreement authorizes District 1-A to prepare a facilities budget for District 1-B's review, but that District 1-A need not obtain District 1-B's approval unless actual expenses incurred on behalf of District 1-B exceed estimated expenses by 12 percent. *Id.* Second, you state that the operating agreement authorizes District 1-A to issue building permits in District 1-B's territory. *See id.* at 3. Third, you state that the operating agreement requires District 1-A to contract with the City for

---

[1]*See* Letter from Honorable Jane Nelson, Chair, Senate Fin. Comm., to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Aug. 12, 2015), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

police and emergency services and makes District 1-B responsible for its share of these costs. *Id.* Finally, you state that the operating agreement provides that District 1-B will not transfer, assign, or convey any of the unutilized capacity that has been financed by District 1-B to any party other than District 1-A or an entity approved by it. *Id.* You ask whether these specific terms in the operating agreement constitute an impermissible abdication of governmental powers as exemplified by the holding in *Clear Lake City Water Authority v. Clear Lake Utilities Co.*, 549 S.W.2d 385 (Tex. 1977). Because "reviewing or construing specific contracts is outside the scope of an attorney general opinion," we cannot definitively answer your question with respect to these specific terms. Tex. Att'y Gen. Op. No. GA-0883 (2011) at 4. We therefore address legal principles applicable to your question in general terms.

In *Clear Lake City Water Authority*, the Texas Supreme Court stated that, pursuant to principles applicable to political subdivisions, a water "[a]uthority could not, by contract or otherwise, bind itself in such a way as to restrict [the] free exercise of [its] governmental powers, nor could it abdicate its governmental functions, even for a 'reasonable time.'" *Clear Lake City Water Auth.*, 549 S.W.2d at 391 (concluding that a water supply contract for an indefinite term violated this principle); *see also Banker v. Jefferson Cty. Water Control & Improvement Dist. No. 1*, 277 S.W.2d 130, 134 (Tex. Civ. App.—Beaumont 1955, writ ref'd n.r.e.) (holding that the district could not bargain away its governmental power to sell its surplus water). Although the *Clear Lake* principle has often been applied to preclude a political subdivision from delegating governmental powers to a private entity, it has also been used to invalidate a delegation of power by one political subdivision to another. *See City of Arlington v. City of Fort Worth*, 844 S.W.2d 875, 878 (Tex. App.—Fort Worth 1992, writ denied) (holding that a city's "agreement to provide sewer service for an indefinite period of time bargains away a city's governmental responsibilities and abdicates its police power"); *City of Farmers Branch v. City of Addison*, 694 S.W.2d 94, 96 (Tex. App.—Dallas 1985, writ ref'd n.r.e) (deciding that a contract whereby one city had unlimited right to discharge sewage into another city's sewer system constituted an impermissible surrender of municipal authority).

In an early opinion concerning a municipal water contract, the Texas Supreme Court explained that the principle is based on what specific action the Legislature has authorized:

> It is now universally conceded that powers are conferred on municipal corporations for public purposes; and, as their powers cannot be delegated, so they cannot be bargained or bartered away. Such corporations may make authorized contracts, but they have no power, as a party, to make contracts or pass by-laws which shall cede away, control, or embarrass their legislative or governmental powers, or which shall disable them from performing their public duties. . . . If the legislature had expressly authorized the making of the contract under consideration, it would doubtless be binding, unless there be some constitutional objection to such a law, [and the contract] could not be held to operate . . . as a surrender of any power the legislature intended the city government to exercise at all times. The question would then have been determined by a power superior

> to that of the municipality,—a power from which it derives all the
> power it has . . . .

*City of Brenham v. Brenham Water Co.*, 4 S.W. 143, 149 (Tex. 1887) (quotation marks and citations omitted). Thus, while a political subdivision may not contract away a governmental power granted by statute in most instances, whether a political subdivision is authorized to enter into a particular contract involving the exercise of its governmental powers is ultimately a question of what the Legislature has authorized. *See* Tex. Att'y Gen. Op. No. JC-0377 (2001) at 5 ("*Unless expressly authorized by the legislature*, a governmental entity may not delegate its legislatively entrusted authority to another entity." (emphasis added)).

As a corollary to the general public policy against delegating authority, the Legislature has expressed public policy in the Interlocal Cooperation Act (the "Act") "to increase the efficiency and effectiveness of local governments by authorizing them to contract, to the greatest possible extent, with one another." TEX. GOV'T CODE § 791.001. The Act authorizes local governments to contract or agree to "provide a governmental function or service that each party to the contract is authorized to perform individually." *Id.* § 791.011(a), (c)(2). The Legislature has specifically authorized one political subdivision to contract with another "to obtain or provide part or all of: (1) water supply or wastewater treatment facilities; or (2) a lease or *operation of water supply facilities or wastewater treatment facilities.*" *Id.* § 791.026(a) (emphasis added). "The powers granted by [section 791.026] prevail over a limitation contained in another law." *Id.* § 791.026(g).

Additionally, article XVI, section 59 of the Texas Constitution specifically requires the Legislature to define the powers of districts organized under that constitutional provision. TEX. CONST. art. XVI, § 59 (providing that these districts have "such powers of government . . . as may be conferred by law"); *see also id.* art. III, § 52(b). Section 49.213 of the Water Code, which provides that a "district may enter into contracts with any person or any public or private entity in the performance of any purpose or function permitted by a district." TEX. WATER CODE § 49.213(b). Subsection (c) provides further:

> A district may enter into contracts, which may be of unlimited duration, with persons or any public or private entities on the terms and conditions the board may consider desirable, fair, and advantageous for:
>
> . . .
>
> (5) the maintenance and operation of any works, improvements, facilities, plants, equipment, and appliances of the district or of another person or public or private entity;
>
> . . . and
>
> (7) the exercise of any other rights, powers, and duties granted to a district.

*Id.* § 49.213(c). Specifically, a district board is authorized to enter into "a contract for technical, scientific, legal, fiscal, or other professional services." *Id.* § 49.067(b). But "[t]he board through such action cannot abrogate its fiscal responsibility." *Id.*

Thus, both section 49.213 of the Water Code and the Interlocal Cooperation Act expressly authorize a district to contract with another district for the operation of water and sewage facilities "on the terms and conditions the [district] may consider desirable, fair, and advantageous." *Id.* § 49.213(c)(5); TEX. GOV'T CODE § 791.026(a). Under section 49.213 of the Water Code, the agreement may govern "the performance of any purpose or function permitted by a district" and "the exercise of any other rights, powers, and duties granted to a district." TEX. WATER CODE § 49.213(b), (c)(7). But no judicial opinion of which we are aware has determined the extent to which one water district may delegate its "rights, powers, and duties" in an operating agreement under section 49.213, or determined the fiscal responsibilities that a water district board may not abrogate under section 49.067.[2] Accordingly, we may only advise that a court would likely conclude that one water district may contract for another water district to perform the rights, powers and duties of the first only to the extent the contract is authorized by the Interlocal Cooperation Act, section 49.213 of the Water Code, or other state law and does not abrogate the first district's fiscal responsibilities under section 49.067 of the Water Code.

---

[2]*Cf. Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 843 & n.10 (Tex. 2010) (construing contract as not violating the "reserved powers doctrine" and noting that subsection 49.213(c)(4) of the Water Code now expressly allows water districts to enter into contracts of unlimited duration); *Clear Lake City Water Auth. v. Kirby Lake Dev., Ltd.*, 123 S.W.3d 735, 751 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (rejecting a water authority's argument that it cannot contractually surrender its legislative discretion to decide whether and how to allocate public funds, holding that section 49.213(c)(4) and other statutes authorized the particular agreement and "[n]othing in the statutes governing the Authority limits its ability to pay its contractual obligations, and Texas courts have routinely enforced contracts requiring water districts to pay in the future").

### S U M M A R Y

A governmental entity may not delegate its legislatively entrusted authority to another entity except as authorized by the Legislature. A court would likely conclude that one water district may contract for another water district to perform the rights, powers, and duties of the first only to the extent the contract is authorized by the Interlocal Cooperation Act, section 49.213 of the Water Code, or other state law and does not abrogate the first district's fiscal responsibilities under section 49.067 of the Water Code.

Very truly yours,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

BRANTLEY STARR
Deputy Attorney General for Legal Counsel

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

WILLIAM A. HILL
Assistant Attorney General, Opinion Committee