Julie Countiss, Justice
Appellant Anna Amboree challenges the trial court's dismissal order and summary judgment in favor of appellees Michelle Bonton, Sonia Jordan, Danielle Harrison, and Decounder Thompson (collectively, "appellees") in her suit against them for *40 violating the Open Meetings Act[1] and for a declaratory judgment. In her sole issue, Amboree contends that the trial court erred in granting summary judgment and dismissing her claims because she sued the proper parties-appellees-and was not required to join the Rhodes School (the "School") in the suit.
We affirm in part and reverse and remand in part.
Background
This suit was appealed to a prior panel of this Court. See generally Amboree v. Bonton , No. 01-14-00846-CV, 2015 WL 4967046 (Tex. App.-Houston [1st Dist.] Aug. 20, 2015, no pet.) (mem. op.). There, we affirmed the trial court's summary judgment in appellees'[2] favor on all of Amboree's claims against them save for the Open Meetings Act and declaratory-judgment claims. Id. at *3-7. We then remanded the suit for further proceedings. Id. at *7.
In her fifth amended petition, Amboree alleges that she was employed as "Chief Financial Officer, Business Manager[,] and Human Resources Manager" for the School, a charter school, and reported directly to Bonton. Bonton, "a founding member, the principal[,] and superintendent" was Amboree's "supervisor." Amboree advised Bonton "on financial and business matters as they related to the school." Jordan, Harrison, and Thompson are members of the School's board.
Amboree alleges that she discovered what she believed to be improprieties in the School's operation. According to her, Bonton "falsified a bid for [a] transportation contract" with Ellis Industries Inc., whose "sole shareholders" are Bonton and her husband. The bid was allegedly false because it "stated that the drivers meet all the state requirements for driving the school bus[,] and the school bus meets all state and local safety requirements, including seat belts[,] and that their drivers have completed or are in the process of completing school bus driver certification," when in fact those requirements were not met. When she raised concerns about this, she alleges that Bonton told her, "I don't mind a slap on the wrist."
Further, allegedly against Amboree's advice, Bonton approved "construction at the school without obtaining the requisite permits f[ro]m the county."
Amboree also alleges that Bonton asked her "to verify employment for [Bonton]'s daughter to receive financial aid," even though the daughter "was out of state on an internship at the time," and that verifying employment under the circumstances would have been illegal and fraudulent. After Amboree's refusal, Bonton then asked the School's board president, Sonia Jordan, "to verify employment for her daughter."
Amboree also alleges that Bonton paid herself "commissions ... as a grant writer on grants," including "grants that did not allow for these types of 'commissions.' " The School's board approved Bonton's request to be paid commissions, plus "$89,700 per year," and gave the approval "retroactive" effect, despite Bonton earlier having "swor[n] under oath that she would not receive compensation from the Rhodes School in her application for charter."
*41 Amboree also alleges that once, when Jordan "was in need of money," Bonton offered to pay "Jordan for the board meetings (past and present) that were being held at her house (although The Rhodes School was closer and free)." And Bonton allegedly "ordered [Amboree] ... to complete and back[-]date a Texas Real Estate Commercial Lease Agreement between Sonia Jordan's husband, Marcellus Jordan," and the School. When Amboree refused to do so, Bonton "obtained a Texas Commercial Lease Agreement from the internet and executed it and illegally backdated the contracts between" the School and Marcellus Jordan.
Bonton also allegedly "inflated the school enrollment to obtain more government money for transportation as transportation funds were based on the amount of students enrolled."
Amboree further alleges that, at a July 2010 board meeting held "without sufficient notice" under the Open Meetings Act, Bonton "added her daughter Ashley and her very good friend Mignonne Anderson to the budget as new full[-]time employees," paying "her daughter full[-]time pay for part[-]time work."
Allegedly because Amboree reported to Bonton or to the School's board that many of these alleged activities were unlawful, Bonton "determined that [Amboree] was an obstacle in" Bonton's "continuing to use" the School "as a conduit or tool ... for her profit," and appellees fired Amboree in violation of the Open Meetings Act. Specifically, Amboree alleges that
Bonton and [the] board members terminated [Amboree]'s employment in a special meeting that was called in violation of The Open Meetings Act as well as took actions in other meetings also in violation of The Open Meetings Act. Specifically, the September meeting where [Amboree] was terminated ... did not contain [Amboree]'s proposed termination on an agenda published pursuant to the Texas Open Records Act.
The meeting during which Amboree's employment was terminated was held on September 26, 2010. Amboree seeks to hold appellees "liable in their individual capacity pursuant to the Texas Open Meetings Act ... because they failed to properly notice and hold the September 26, 2010 meeting terminating [Amboree]."
Amboree therefore filed this suit, seeking a declaration "that Defendants' termination of [Amboree] in such meeting is void," along with "reinstatement of [Amboree] to the date of that termination meeting on September 26, 2010." She also seeks a declaration that "the actions taken in any meeting including the board, including but not limited to the meeting terminating [Amboree] were void and unenforceable and invalid." Amboree requests "actual damages," "back pay lost," "front pay," "general damages for the damages to [her] reputation," pre-judgment and post-judgment interest, "[d]amages for mental pain and mental anguish and other compensatory damages," "[p]unitive or [e]xemplary [d]amages," attorneys' fees, and court costs.
After remand from the prior appeal, appellees filed their "Motion to Dismiss Pursuant to CPRC Section 37.006" and a "Motion for Final Summary Judgment."
In their motion to dismiss, appellees contended that the School is "an indispensable party" to this suit and that Amboree's failure to have the School served with process and joined in the suit "defeats the Court's subject[-]matter jurisdiction" over the suit under Civil Practice & Remedies Code section 37.006(a). Amboree responded that a dismissal for lack of jurisdiction under Section 37.006(a) "unduly limit[s] the availability of relief between the parties *42 already joined and would be contrary to the dictate that the Declaratory Judgment Act be liberally construed."
In their motion for summary judgment, appellees contended that any Open Meetings Act claim arising out of the July 2010 board meeting was "barred by the four[-]year statute of limitations inasmuch as this claim was first raised in Plaintiff's Fourth Amended Petition, filed on September 8th 2014" and that the Open Meetings Act claim arising out of the September 2010 board meeting during which Amboree's employment was terminated, "although raised within four years, is also time[-]barred due to Amboree's failure to exercise due diligence inasmuch as she has not requested citation for [the School] for the two years and ten months since the filing of Amboree's Fourth Amended Petition." Amboree responded that she named "the proper entities" in her suit and that she was not "required to name" the School in her suit because she instead "named the Board of Directors and the Chief Executive Officer who took the illegal action against her."[3]
The trial court granted the motion to dismiss and the motion for summary judgment on the same day. The trial court then entered a "Final Judgment" after Amboree nonsuited her claims against other parties who are not parties to this appeal. The dismissal and summary-judgment orders therefore merged into the Final Judgment. See Webb v. Jorns , 488 S.W.2d 407, 408-09 (Tex. 1972).
Dismissal Order
In a portion of her sole issue, Amboree argues that the trial court erred in granting appellees' motion to dismiss because she "sued (and served) the Board of Trustees (Directors) of" the School "in their official capacities," thereby "suing the entity of which they were officials." In response, appellees argue that, in fact, Amboree never served the School "and she is now barred by limitations from suing" the School and that, because only the School can be responsible for the declaratory and monetary relief that Amboree seeks by her suit, the trial court lacked subject-matter jurisdiction over her suit under both Civil Practice & Remedies Code section 37.006(a) and Rule of Civil Procedure 39. Amboree responds that a dismissal under Section 37.006(a) here "unduly limit[s] the availability of relief between the parties already joined and would be contrary to the dictate that the Declaratory Judgment Act be liberally construed." She also responds that "the proper entities were named" in the suit and that she was not "required to name" the School because she nonetheless "named the Board of Directors and the Chief Executive Officer [of the School,] who took the illegal action against her."
A. Standard of Review
When deciding appeals, the standard of review we must apply often depends on the procedural vehicle that gave rise to the trial-court action being appealed-here, an order granting a "Motion to Dismiss Pursuant to CPRC Section 37.006," asserting a lack of subject-matter jurisdiction. The parties dispute what kind of procedural vehicle this is.
Assuming all other applicable requirements are met, any one of several procedural vehicles may be used to challenge a trial court's subject-matter jurisdiction. These include a plea to the *43 jurisdiction;[4] a motion for summary judgment;[5] a generalized "motion to dismiss" on jurisdictional grounds, sometimes referred to as a species of "dilatory plea";[6] and a Rule of Civil Procedure 91a motion to dismiss.[7]
Amboree asserts that appellees' motion to dismiss is a Rule 91a motion. Appellees styled their motion as a "Motion to Dismiss Pursuant to CPRC Section 37.006 [ (a) ]." The motion relies on evidence extrinsic to Amboree's petition. And appellees disclaimed any reliance on Rule 91a in their briefing before the trial court and this Court. We therefore do not consider appellees' motion to be a Rule 91a motion. See TEX. GOV'T CODE § 22.004(g) ; TEX. R. CIV. P. 91a.6; ConocoPhillips Co. v. Koopmann , 547 S.W.3d 858, 880 (Tex. 2018) ; Reaves v. City of Corpus Christi , 518 S.W.3d 594, 605-07 (Tex. App.-Corpus Christi-Edinburg 2017, no pet.) ; Dailey v. Thorpe , 445 S.W.3d 785, 790 (Tex. App.-Houston [1st Dist.] 2014, no pet.).
Among the remaining options for which procedural vehicle appellees used, they sometimes refer to their motion as a general motion to dismiss and other times as a plea to the jurisdiction.
No matter which of those two it may be, for purposes of this appeal, the standards of review are basically the same. We review the motion de novo because it involves an asserted lack of subject-matter jurisdiction, turning on Section 37.006(a) and Rule of Civil Procedure 39. See AC Interests, L.P. v. Tex. Comm'n on Envtl. Quality , 543 S.W.3d 703, 706 (Tex. 2018) (general motion to dismiss); Suarez v. City of Tex. City , 465 S.W.3d 623, 632 (Tex. 2015) (plea to the jurisdiction); Paske v. Fitzgerald , 499 S.W.3d 465, 471 (Tex. App.-Houston [1st Dist.] 2016, no pet.) (plea to the jurisdiction);
*44 Fink v. Anderson , 477 S.W.3d 460, 465 (Tex. App.-Houston [1st Dist.] 2015, no pet.) (general motion to dismiss). Whether subject-matter jurisdiction exists is a question of law, and we review questions of law de novo. See McFadin v. Broadway Coffeehouse, LLC , 539 S.W.3d 278, 282 (Tex. 2018) ; Suarez , 465 S.W.3d at 632. "In a de novo review we afford the lower court's ruling no deference." McFadin , 539 S.W.3d at 282.
Here, the scope of appellate review is limited to arguments raised in the motion to dismiss for failure to join an indispensable party. See Miller v. Gann , 822 S.W.2d 283, 286 (Tex. App.-Houston [1st Dist.] 1991), writ denied but disapproved of on other grounds by 842 S.W.2d 641 (Tex. 1992). We use a similar approach in reviewing pleas to the jurisdiction, while recognizing that subject-matter-jurisdiction challenges may be raised for the first time on appeal. See Green Tree Servicing, LLC v. Woods , 388 S.W.3d 785, 794-95 (Tex. App.-Houston [1st Dist.] 2012, no pet.) ; Anderson v. Am. Fed'n of Gov't Emps. , 338 S.W.3d 709, 713 (Tex. App.-Houston [1st Dist.] 2011, pet. denied).
Appellees' motion relied on evidence extrinsic to Amboree's live pleading and its exhibits, so "we consider the plaintiff['s] pleadings and the evidence pertinent to the jurisdictional inquiry, without regard to the case's merits." See Fink , 477 S.W.3d at 465. We are to construe the pleadings in the plaintiff's favor and look to the pleader's intent. Cty. of Cameron v. Brown , 80 S.W.3d 549, 555 (Tex. 2002).
When a defendant's jurisdictional argument depends on evidence, the standard of review relating to that evidence mirrors the summary-judgment standard of review:
Initially, the defendant carries the burden to meet the summary judgment proof standard for its assertion that the trial court lacks jurisdiction. If it does, the plaintiff is then required to show that a disputed material fact exists regarding the jurisdictional issue. If a fact issue exists, the trial court should deny the plea.
Mission Consol. Indep. Sch. Dist. v. Garcia , 372 S.W.3d 629, 635 (Tex. 2012). "If the evidence raises a fact question on jurisdiction, then the trial court cannot grant the plea to the jurisdiction, and the fact question will be resolved by the fact finder." City of Corsicana v. Stewart , 249 S.W.3d 412, 414 (Tex. 2008) ; see also Byrdson Servs., LLC v. S. E. Tex. Reg'l Planning Comm'n , 516 S.W.3d 483, 484 (Tex. 2016) ("When evidence is presented with a plea to the jurisdiction, the trial court may rule on the plea as a matter of law if the evidence does not raise a fact issue on the jurisdictional question.").
B. Review of Jurisdictional Arguments Under Section 37.006(a) and Rule 39
"When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties. A declaration does not prejudice the rights of a person not a party to the proceeding." TEX. CIV. PRAC. & REM. CODE § 37.006(a). When a party asserts Section 37.006(a) as a bar to any judgment favoring a party who has failed to join all necessary parties to his or her suit, Rule of Civil Procedure 39 's standards govern. See Brooks v. Northglen Ass'n , 141 S.W.3d 158, 162-64 (Tex. 2004) ; Clear Lake City Water Auth. v. Clear Lake Utils. Co. , 549 S.W.2d 385, 390 (Tex. 1977).
That rule requires that:
A person who is subject to service of process shall be joined as a party in the action if *45 (1) in his absence complete relief cannot be accorded among those already parties, or
(2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may
(i) as a practical matter impair or impede his ability to protect that interest or
(ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party....
TEX. R. CIV. P. 39(a).
"There is no litmus paper test for determining whether a particular party is indispensable" under Section 37.006(a) and Rule 39. Sage St. Assocs. v. Fed. Ins. Co. , 43 S.W.3d 100, 104 (Tex. App.-Houston [1st Dist.] 2001, pet. denied) (citing Clear Lake City Water Auth. , 549 S.W.2d at 390 ). We therefore "must examine the surrounding facts and circumstances of the case to determine if the interests of an absent party will be prejudiced and if an adequate judgment can be rendered for the parties before the court." Id. (citing Vondy v. Comm'rs Court of Uvalde Cty. , 620 S.W.2d 104, 106-07 (Tex. 1981) ; Clear Lake City Water Auth. , 549 S.W.2d at 390 ).
Rarely is a failure to comply with Section 37.006(a) a jurisdictional bar. See Brooks , 141 S.W.3d at 163 ("[I]t would be rare indeed if there were a person whose presence was so indispensable in the sense that his absence deprives a court of jurisdiction....") (quoting Cooper v. Tex. Gulf Indus., Inc. , 513 S.W.2d 200, 204 (Tex. 1974) ). Instead, a failure to comply with Section 37.006(a) usually triggers an analysis of "whether the trial court should have refused to enter a judgment" until the necessary parties are joined. See ids="10119636" index="30" url="https://cite.case.law/sw2d/513/200/#p204">id. at 162 (citing Cooper , 513 S.W.2d at 204 ).
C. Indispensable Parties
To determine whether the facts and circumstances surrounding Amboree's suit make the School an indispensable party, we are guided by a series of opinions from our Supreme Court: (1) Gaal v. Townsend , 77 Tex. 464, 14 S.W. 365 (1890) ; (2) Vondy ; (3) Brooks ; and (4) Henry v. Cox , 520 S.W.3d 28 (Tex. 2017).
1. Gaal v. Townsend
Gaal had been elected a county commissioner of El Paso County and "entered upon the duties of the office." Gaal , 14 S.W. at 365. Shortly thereafter, he accepted the office of mayor of Yselta. Id. The county judge of El Paso County, Townsend, treated Gaal's commissionership as having been vacated by his accepting the mayoralty, and Townsend appointed Schutz to fill the vacancy. Id. Gaal sued Townsend and Schutz, seeking a writ of mandamus compelling them to permit Gaal "to sit and act as a member of the commissioners' court." Id. Then, "[t]here was a demurrer to the petition for the want of proper parties," the trial court sustained the demurrer, Gaal refused to amend his pleadings, and his suit was dismissed. Id.
The Supreme Court affirmed the dismissal. Id. It reasoned that the relief Gaal sought-sitting upon, and acting as a member of, the commissioners' court-was the commissioners' court's majority's to give, not simply the county judge's:
The duty here sought to be enforced is to permit the appellant to sit and act as a member of the commissioners' court. It is one which is incumbent upon every member of that court, and can be exercised only through the will of a majority *46 of their body. How, then, can the performance of this duty be compelled by a suit against one alone? The other members of the court, not being parties to the writ, could not be affected by any judgment that might be rendered, and could not be held in contempt for refusing to admit the plaintiff to act as a member, although this court should in this suit declare him entitled to the office, and command the defendant Townsend to admit him as such. It is clear that a mandamus should not issue to compel the county judge to do an act which could only be performed with the consent of others. The mere fact that the act of the county judge in treating appellant's office as vacant and in appointing his successor may have led to the action of the commissioners' court in excluding appellant from the duties of his office can make no difference. In a proceeding by mandamus to compel a body of persons to perform an act, all whose duty and privilege it may be to participate in the performance of that act must be made parties defendant.
Id. at 365-66. The court therefore affirmed the dismissal because Gaal failed to have joined the rest of the commissioners' court in the suit. Id. at 366.
2. Vondy v. Commissioners Court of Uvalde County
Vondy was elected a constable in Uvalde County, he assumed office, but the county commissioners' court declined to set his salary. Vondy , 620 S.W.2d at 104-05. Vondy sued the commissioners' court itself, the county judge, and three of the four commissioners, seeking a writ of mandamus directing that his salary be set. Id. He did not sue the fourth commissioner, however, because that commissioner "was willing to comply with the statute" that purportedly required that a salary be set. Id.
The trial court denied Vondy's request for a writ of mandamus. Id. On appeal, though no party had raised the issue in the trial court, the court of appeals ordered Vondy's suit dismissed for failure to have joined the fourth commissioner, relying on Gaal . Id.
The Supreme Court applied Rule 39, reversed the court of appeals' judgment, and remanded the suit to the trial court for further proceedings. Id. at 105-07, 110. It reasoned that, under the facts and circumstances of the suit, the fourth commissioner was not an indispensable party because "[t]his is not a situation where a judgment would adversely affect the interests of absent parties who had no opportunity to assert their rights in the trial court." Id. at 106-07. This was so because "the interests of all the parties could be adjudicated and complete relief given." Id. at 107. The court distinguished Gaal because "part of the rationale behind [ Gaal ] was that only a majority of the commissioners could permit [Gaal] to perform his duties as a county commissioner." Id. By contrast, "[i]n the present suit three of the four commissioners and the county judge were made parties individually. The commissioners court itself was also named.... Consequently, Vondy's failure to join all four county commissioners was not fundamental error." Id. at 107-08.
3. Brooks v. Northglen Ass'n
Some, but not all, of the members of a homeowners' association sued the association, Northglen, seeking a declaration that it had unlawfully increased annual assessments. Brooks , 141 S.W.3d at 160-61. The plaintiffs owned homes in Sections One, Two, Four, and Five of the area governed by Northglen, but no plaintiff owned a home in Sections Three or Six. Id. Nevertheless, the plaintiffs sought to invalidate the increase in assessments for all six sections.
*47 Id. Northglen contended that the trial court lacked subject-matter jurisdiction because not all Northglen property owners were joined in the suit. Id. at 161. The Supreme Court analyzed this contention under Section 37.006(a) and Rule 39. Id. at 162-64.
The court recast Northglen's contention as posing merely a "prudential question" rather than a jurisdictional one. Id. at 162. Because no one disputed that the Declaratory Judgment Act gave the trial court jurisdiction "to declare the rights, status, and other legal relations" among the parties that were in the suit, Northglen's contention would not undermine subject-matter jurisdiction for those parties' contests to their own assessments. See ids="9216119" index="59" url="https://cite.case.law/sw3d/141/158/#p162">id. (internal quotation omitted). The court held that nothing in Rule 39 "precluded the trial court from rendering complete relief among Northglen and the eight homeowners who had sued for a declaration of rights.... [T]he trial court's judgment represents a final and complete adjudication of the dispute for the parties who were before the court." Id.
As for the assessments for Sections Three and Six, however, the trial court lacked jurisdiction to grant any declaratory relief for assessments in those sections because there were no plaintiffs who owned homes in those sections. Id. at 163-64. This violated the justiciability requirement for jurisdiction: "[a] declaratory judgment requires a justiciable controversy as to the rights and status of parties actually before the court for adjudication, and the declaration sought must actually resolve the controversy," and, without any Section Three or Six plaintiffs, "any opinion interpreting those sections would be purely advisory." Id.
4. Henry v. Cox
The Supreme Court revisited each of Gaal , Vondy , and Brooks in a recent dispute involving the salary to be paid to a county employee whose position was created by the Galveston County Commissioners' Court but who worked for Galveston County's district judges. The commissioners' court created the position of Director of Justice Administration and hired Quiroga to fill it. Henry , 520 S.W.3d at 31-32. The position had some judicial-support responsibilities and some non-judicial-support responsibilities. Id. at 32.
County Judge Henry and other county commissioners became dissatisfied with Quiroga's performance, so Judge Henry fired her, and the commissioners' court ratified the decision. Id. After a job posting for the director role was advertised, district judge Cox issued a sua sponte order requiring Henry to reinstate Quiroga. Id. After some negotiation, the commissioners' court then created a new Court Manager position; gave it only judicial-support responsibilities; and allowed the county's judges to pick the new hire for the position, including Quiroga. Id. at 32-33. The commissioners' court, however, set a salary range for the position much lower than what the county's judges had requested. See itation case-ids="12381524" index="68" url="https://cite.case.law/sw3d/520/28/">id.
Judge Cox sued Judge Henry, seeking, among other relief, an injunction that Quiroga be reinstated to her former director role at her former, higher salary. Id. at 33. The trial court entered a temporary injunction reinstating Quiroga, and a split panel of our court affirmed. Id.
Before the Supreme Court, Judge Henry contended that the trial court erred in entering the temporary injunction because any such injunctive relief "should have been directed to the Commissioners Court, not just to Judge Henry," as indispensable parties. Id. The Supreme Court applied Rule 39, particularly its requirement that "complete relief" be available to those who *48 are joined in the suit, and surveyed Gaal , Vondy , and Brooks to determine whether the injunction could stand without the county commissioners joined. Id. at 34-36.
The court rejected Judge Cox's arguments that his suit was more like Vondy than Gaal and that the temporary injunction therefore need not be dissolved. Id. at 35. It pointed out how Vondy's having sued a commissioners'-court majority, and the court itself, distinguished Vondy from Gaal :
Judge Cox misses key takeaway points from Vondy -namely, how and why we distinguished it from Gaal . We noted that Gaal had failed to name anyone other than the county judge in his petition, even though a majority vote from the commissioners would be necessary to allow him to take his seat. By contrast, Vondy had named the county judge and three of the four commissioners in his petition for mandamus. Additionally, unlike Gaal, Vondy had named the commissioners court as a party. Here, Judge Cox named only Judge Henry as the party to the requested injunction-not the Commissioners Court nor the four other commissioners.
Id. at 35 & nn.34-36. Judge Henry acting alone could not reinstate Quiroga because that would be a decision for the commissioners' court. See ids="12381524" index="75" url="https://cite.case.law/sw3d/520/28/">id. at 35-36 & n.42 (citing Gaal , 14 S.W. at 365-66 ). Therefore, "[t]he other commissioners-or at least the Commissioners Court-were indispensable parties. Judge Cox's failure to name them deprived the trial court of the authority to bind them." Id. at 36.
5. Whether Complete Relief Can Be Afforded Among Amboree and Appellees
Bearing Gaal , Vondy , Brooks , and Henry in mind, we turn to whether the trial court could have afforded complete relief among the parties joined in Amboree's suit, based on the relief that she seeks, or whether the School was so indispensable that the trial court lacked jurisdiction over Amboree's claims.
In her live petition, Amboree seeks:
• a judgment "declaring that [appellees] violated the Open Meetings Act and to declare that [appellees'] termination of [Amboree] in such meeting is void with the reinstatement of [Amboree] to the date of that termination meeting";
• "[a] declaration that ... the actions taken in any meeting including the board, including but not limited to the meeting terminating [Amboree,] were void and unenforceable and invalid";
• "compensation for wages, benefits, and attorney's fees which occurred during the time of this illegal termination" and "[j]udgment against [appellees], for actual damages[,] ... back pay lost[,] ... [and] front pay";
• "general damages for the damage to [Amboree]'s reputation";
• "[d]amages for mental pain and mental anguish and other compensatory damages";
• "[p]re-judgment interest" and "[p]ost-judgment interest";
• "[p]unitive or [e]xemplary [d]amages";
• attorneys' fees and court costs; and
• "[s]uch other and further relief, at law or in equity, general or special to which [Amboree] may show [herself] justly entitled."
Amboree contends that she sued appellees in both their official and individual capacities. Appellees disagree, pointing to her petition's allegations that appellees "did not act within the scope of [their] authority" when they allegedly committed *49 the acts that are the subject of Amboree's suit. They also suggest that, because Bonton was served with a citation that says "(Individual)" next to her name, she was sued in only her individual capacity. We need not decide the issue of in what capacity appellees were sued. See TEX. R. APP. P. 47.1.
Amboree attached to her response to the motion to dismiss a page from Bonton's deposition. Bonton testified that she was the chief executive officer, superintendent, and principal of the School; she is therefore "responsible for what happens at the [S]chool"; and she, Jordan, Thompson, and Harrison are the "board members" for the School. Based on this testimony, Amboree argued that her petition "named the Board of Directors and the Chief Executive Officer who took the illegal action against her" and that she therefore did not need to join the School.
Amboree also asserts that, in her petition, she did, in fact, add the School to the suit. Appellees dispute this, pointing out that the School has never been served with process. On appeal, Amboree does not appear to dispute appellees' position.
We will treat the School as we did the last time this case was before us because the School's status before us has not changed: "Because The Rhodes School is not a party to this appeal, we express no opinion as to whether it is a defendant in this case." Amboree , 2015 WL 4967046, at *5 n.7. Because of this, we need not address appellees' separate contention for dismissal that the School may not now be joined as a defendant because Amboree has already elected, under the Tort Claims Act, to sue the board and officers. See TEX. R. APP. P. 47.1.
We conclude that Bonton's deposition testimony raises a fact issue about whether the parties before the trial court could be afforded complete relief among themselves without joining the School. In her claims for declaratory relief, and leaving aside for the moment her request for a declaration of reinstatement, Amboree wants the trial court to declare that actions taken by the board were unlawful under the Open Meetings Act. Her evidence via Bonton's deposition testimony gives rise to the reasonable inference that the School's board and officers-all of them-are already before the court. Regardless of the School's presence, then, the trial court may enter a judgment declaring to the board and officers-Bonton, Jordan, Thompson, and Harrison-that the actions they took allegedly violated the Open Meetings Act.
Regarding her claims for a declaration of reinstatement to employment at the School and for monetary relief, Amboree responds both that appellees may be held personally liable to her in damages for violating the Open Meetings Act and that joining the board members suffices for her to be reinstated, instead of needing to have joined the School too.
Appellees respond that the School must be joined because "[t]he remedy Amboree seeks may only be satisfied by" the School alone and that "[r]einstatement and back and front pay are damages that only [the School] would be responsible for, if Amboree's claims have merit...."
We must not, and do not, address the suit's merits. See Fink , 477 S.W.3d at 465. Instead, we are to construe Amboree's pleadings and the factual record in her favor. See Mission Consol. Indep. Sch. Dist. , 372 S.W.3d at 635 ; Cty. of Cameron , 80 S.W.3d at 555. In doing so, her pleading's allegations, plus the fact issue raised by Bonton's deposition testimony about who the School's decision-makers are, survive dismissal. We conclude this because of how the facts and circumstances surrounding Amboree's suit allow for complete reinstatement *50 and monetary relief among the parties joined without need of also joining the School, under the reasoning of Vondy , Brooks , and Henry .
Vondy's claims survived an indispensable-parties challenge because he sued a majority of the commissioners' court and the court itself. See Henry , 520 S.W.3d at 35-36 ; Vondy , 620 S.W.2d at 106-08. Gaal's and Judge Cox's claims did not survive because they sued only the respective county judges for relief that only a commissioners'-court majority could have provided. See Henry , 520 S.W.3d at 35-36 & n.42 ; Gaal , 14 S.W. at 365-66. Amboree's appeal presents an issue lying somewhere between Vondy , on the one hand, and Gaal and Henry , on the other: the factual record suggests that she sued a majority-indeed, all-of the School's board and officers, but she did not sue the School itself.
With the School's full complement of board members and officers before the trial court, the School is not in danger of its interests remaining unprotected. As the Supreme Court reasoned in Vondy , "[t]his is not a situation where a judgment would adversely affect the interests of absent parties who had no opportunity to assert their rights in the trial court." 620 S.W.2d at 106-07. The board and officers may adequately protect the School's interests before the trial court.[8]
With this protection in place, a declaration directed at Bonton, Jordan, Thompson, and Harrison could provide Amboree the reinstatement relief that she seeks, assuming all other applicable requirements for declaratory relief are met in the suit. The board and officers would be bound by the trial court's judgment like the missing commissioners would have been bound to act in either Gaal or Henry , had they been joined in those suits.
If the commissioners' court, as an entity, in either Vondy or Henry were the indispensable party without which the suit could not proceed, then the Supreme Court's reasoning would have come out differently. For example, in Vondy , the court would not have distinguished Gaal by saying that "[p]art of the rationale behind [ Gaal ] was that only a majority of the commissioners could permit [Gaal] to perform his duties as a county commissioner." 620 S.W.2d at 107 (emphasis added). Instead, the distinction would have been that only the commissioners' court , as an entity, could have admitted Gaal. Similarly in Henry , the court's reasoning that "[t]he other commissioners -or at least the Commissioners Court-were indispensable parties ," leading to the conclusion that "Judge Cox's failure to name them deprived the trial court of the authority to bind them," would have omitted mention of the other commissioners entirely. See 520 S.W.3d at 36 (emphases added). The opinion instead would have turned only on the omission of the commissioners' court, as an entity, as a party. We therefore conclude that a fact issue exists about whether all of the School's board and officers are joined in the suit and that, if they all are, then the trial court has before it all parties necessary to afford complete relief in the suit based on what Amboree's petition seeks.
*51 Also, the trial court may afford complete relief on Amboree's claims for monetary relief because she pleads that the appellees, as individuals, are liable to her in damages for violating the Open Meetings Act. Whether that will prove to be true on the merits is a question we must refrain from answering at this stage. See Fink , 477 S.W.3d at 465.
Accordingly, we conclude that the School was not indispensable to Amboree's suit under Section 37.006(a) and Rule 39. We hold that the trial court erred in granting the motion to dismiss based on the jurisdictional, indispensable-party argument.
We sustain this portion of Amboree's sole issue.
Summary Judgment
Our holding concerning the dismissal order does not dispose of this appeal, however. Separately, the trial court granted appellees a complete summary judgment on Amboree's claims. The dismissal order and the summary-judgment order were both entered on the same day, without any indication of which was entered first. Because the summary-judgment order could theoretically independently support dismissal of Amboree's remaining claims, we analyze the parties' competing summary-judgment arguments.
In a portion of her sole issue, Amboree argues that the trial court erred in granting appellees' motion for summary judgment because she "sued (and served) the Board of Trustees (Directors) of" the School "in their official capacities," thereby "suing the entity of which they were officials." In response, appellees argue that, in fact, Amboree "never served" the School, "and she is now barred by limitations from suing" the School and, because only the School can be responsible for the declaratory and monetary relief that Amboree seeks by her suit, her lack of due diligence in seeing that the School be served with process and joined in this suit imposes a limitations bar on her now having the School served. Amboree responds that "the proper entities were named" in her suit and that she was not "required to name" the School in her suit because she instead "named the Board of Directors and the Chief Executive Officer who took the illegal action against her."
We review the decision to grant summary judgment de novo. Schlumberger Tech. Corp. v. Pasko , 544 S.W.3d 830, 833 (Tex. 2018). And we "review the record 'in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.' " Id. (quoting City of Keller v. Wilson , 168 S.W.3d 802, 824 (Tex. 2005) ).
"A motion for summary judgment must itself expressly present the grounds upon which it is made, and must stand or fall on these grounds alone." Sci. Spectrum, Inc. v. Martinez , 941 S.W.2d 910, 912 (Tex. 1997) (citing TEX. R. CIV. P. 166a(c) ; McConnell v. Southside Indep. Sch. Dist. , 858 S.W.2d 337, 341 (Tex. 1993) ); accord Orion Ref. Corp. v. UOP , 259 S.W.3d 749, 759 n.17 (Tex. App.-Houston [1st Dist.] 2007, pet. denied).
Appellees' motion for summary judgment proceeded on two tracks, according to their conception of Amboree's suit. Appellees asserted that Amboree alleged a "claim regarding the July 2010 meeting" of the School's board and a separate "claim regarding the September 26th 2010 meeting," at which Amboree's employment was allegedly terminated. They argued in their motion that any claim relating to the July 2010 meeting "is clearly barred by the four[-]year statute of limitations" provided by the residual limitations statute. Then they argued that any claim relating to the September 26, 2010 meeting, "although *52 raised within four years, is also time barred due to Amboree's failure to exercise due diligence" to have the School served with process and joined in the suit. The motion as to the September 26, 2010 board meeting depends on appellees' position that the School is an indispensable party:
Thus, [the School], Amboree's employer, is not a defendant in this case and Amboree is barred by limitations from joining it as a defendant in this case. As set forth in [Appellees'] Motion to Dismiss, [the School] is a necessary party to this litigation. [Appellees] hereby incorporate by reference their Motion to Dismiss.
(Emphasis added.) Appellees argue similarly before us: "The September 26th 2010 claim is also time barred because Amboree failed to serve [the School]."
Amboree's petition does not appear to plead an Open Meetings Act claim based on any allegedly wrongful act taken against her at the July 2010 meeting. Instead, the allegations concerning what happened at the July 2010 meeting appear to be one of a number of her factual allegations of allegedly unlawful activity taken by the School's board or officers: according to Amboree, the unlawful activity (in July 2010 and at other times) led Amboree to report her concerns to Bonton or to the board, which in turn led to the board terminating her employment in September 2010, which event is the source of her claims for declaratory and monetary relief.
If, however, Amboree does bring a separate claim for declaratory or monetary relief based on actions taken against her at the July 2010 meeting, then we must affirm its dismissal because Amboree did not raise any argument in either her summary-judgment response or in her appellant's brief before this Court for why such a claim should survive. See TEX. R. CIV. P. 166a(c) ; TEX. R. APP. P. 38.1(i).
As for limitations barring the claims stemming from actions taken at the September 26, 2010 meeting, appellees' argument in their motion for summary judgment fails because it depends on the School's indispensability to the suit, which argument we rejected above. No summary-judgment ground independent of the School's alleged indispensability was presented in the motion, so we must reverse the trial court's summary-judgment order as to Amboree's claims stemming from the September 26, 2010 board meeting. See Sci. Spectrum , 941 S.W.2d at 912 (citing TEX. R. CIV. P. 166a(c) ; McConnell , 858 S.W.2d at 341 ); Orion Ref. , 259 S.W.3d at 759 n.17.
Accordingly, we hold that the trial court did not err in granting summary judgment as to any July 2010-board-meeting claim but that the trial court did err in granting summary judgment as to the September 2010-board-meeting claims.
We sustain this portion of Amboree's sole issue.
Conclusion
We affirm the trial court's rendition of summary judgment insofar as it dismissed any claim brought by Amboree stemming from any allegedly unlawful action taken against her at the July 2010 board meeting. We affirm the portions of the final judgment relating to the nonsuits. We reverse the remainder of the final judgment. We remand for further proceedings consistent with this opinion.

See Tex. Gov't Code §§ 551.001 -.146; see also Tex. Educ. Code § 12.1051 (applying certain open-meetings requirements to certain charter-school entities and their governing bodies).

Amboree has since nonsuited Ellis Bonton, Ellis Industries Inc., and The Education Valet Inc. Those parties, and any claims that had been asserted in this suit against them by Amboree, are not before us in this appeal.

Nowhere in their briefing on their motion to dismiss, on their motion for summary judgment, or before this Court did appellees raise sovereign or governmental immunity as a bar to this suit.

See, e.g. , Tex. Dep't of Criminal Justice v. Simons , 140 S.W.3d 338, 349 (Tex. 2004) ("[A]n interlocutory appeal may be taken from a refusal to dismiss for want of jurisdiction whether the jurisdictional argument is presented by plea to the jurisdiction or some other vehicle, such as a motion for summary judgment."); Bland Indep. Sch. Dist. v. Blue , 34 S.W.3d 547, 554 (Tex. 2000) ("The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction, as well as by other procedural vehicles, such as a motion for summary judgment.").

See, e.g. , Simons , 140 S.W.3d at 349 ; Bland Indep. Sch. Dist. , 34 S.W.3d at 554.

See, e.g. , AC Interests, L.P. v. Tex. Comm'n on Envtl. Quality , 543 S.W.3d 703, 706, 711-15 (Tex. 2018) (reversing court of appeals' judgment affirming trial court's dismissal on jurisdictional grounds because statute at issue was not jurisdictional, yet noting that defendant's motion raising jurisdictional argument was generalized motion to dismiss raising dilatory plea: "[T]he court [of appeals] concluded that the [defendant]'s motion was in substance a general motion to dismiss that the court could review.... We agree that the [defendant]'s dismissal motion is premised on matters of statutory construction rather than on any matter subject to Rule 91a and, therefore, treat it as a general motion to dismiss or dilatory plea premised on the [defendant]'s interpretation of the statute.") (citing Bland Indep. Sch. Dist. , 34 S.W.3d at 554 ).

See, e.g. , Reaves v. City of Corpus Christi , 518 S.W.3d 594, 603-07 (Tex. App.-Corpus Christi-Edinburg 2017, no pet.) (construing defendant's trial-court filing as Rule 91a motion to dismiss for lack of jurisdiction due to governmental immunity, despite defendant's insistence on appeal that filing was instead plea to the jurisdiction, in part because Rule 91a "is the procedural framework which the [defendant]'s motion invoked, upon which the [plaintiffs] relied, and by which the trial court decided this case"); but see City of Austin v. Liberty Mut. Ins. , 431 S.W.3d 817, 822 n.1 (Tex. App.-Austin 2014, no pet.) (construing defendant's trial-court filing as plea to the jurisdiction, despite defendant's styling filing as Rule 91a motion to dismiss, because filing "was used to challenge the trial court's subject-matter jurisdiction and therefore effectively constitutes a plea to the jurisdiction").

In fact, they may be required to protect the School's interests as fiduciaries for the School. Cf. Johnson v. Tex. Serenity Acad., Inc. , No. 01-14-00438-CV, 2015 WL 1135947, at *6 (Tex. App.-Houston [1st Dist.] May 27, 2015, pet. denied) (mem. op.) ("Academy [charter school] established in its summary-judgment motion that Johnson, as superintendent and board director, owed Academy a fiduciary duty and that he had responsibility for and control over Academy's management and finances."). We express no opinion on this issue.