**Opinion issued March 8, 2022**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-21-00026-CV

_____

## ANNA AMBOREE, Appellant

## V.

## MICHELLE BONTON, SONIA JORDAN, DANIELLE HARRISON, AND DECOUNDER THOMPSON, Appellees

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-55684**

---

## MEMORANDUM OPINION

Appellant, Anna Amboree, challenges the trial court's order granting the motion to dismiss of appellees, Michelle Bonton, Sonia Jordan, Danielle Harrison, and Decounder Thompson (collectively, "appellees"), in Amboree's suit against

them for violation of the Texas Open Meetings Act[1] and a declaratory judgment. In two issues, Amboree contends that the trial court erred in granting appellees' motion to dismiss.

We affirm.

## Background

This is our third appeal involving these parties.[2] In her fifth amended petition, Amboree alleged that she was employed as the Chief Financial Officer ("CFO"), Business Manager, and Human Resources Manager for The Rhodes School, a charter school. Amboree reported directly to Bonton, "a founding member, the principal[,] and [the] superintendent" of The Rhodes School, and Amboree's supervisor.[3] Amboree advised Bonton "on financial and business matters as they related to the school." According to Amboree, she told Bonton that "the school was required to obtain permits from [the county] when performing construction on the school"; Bonton could not use the school's property "for personal use"; and fulfilling Bonton's request to "verify employment" for Bonton's daughter would be

---

[1]   *See* TEX. GOV'T CODE ANN. §§ 551.001–.146.

[2]   *See Amboree v. Bonton*, 575 S.W.3d 38 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *Amboree v. Bonton*, No. 01-14-00846-CV, 2015 WL 4967046 (Tex. App.—Houston [1st Dist.] Aug. 20, 2015, no pet.) (mem. op.).

[3]   According to Amboree, Jordan, Harrison, and Thompson are members of The Rhodes School's board of directors (the "board").

"fraud[ulent]" because her daughter was "out of state on an internship." Bonton continuously "ignored" Amboree's advice.

Amboree also alleged that Bonton wrongfully "took out and paid profit in the form of 'commissions' [to] herself as a grant writer on grants," employed relatives at The Rhodes School, and allowed relatives to serve on the school's board of directors (the "board")—actions which Bonton swore on the charter school's application that she would not do. Moreover, the "principal[s]" and "sole shareholders" of the company that "provide[s] . . . transportation [for] The Rhodes School" are Bonton and her husband. Jordan, Bonton's "good friend and board member," on behalf of The Rhodes School, signed a transportation contract with the Bontons' company, Ellis Industries, Inc., and "a check for $15,000" without approval from the board. And although Amboree recommended that The Rhodes School "purchase a bus to transport students," Bonton decided to use a van instead, "in violation of the transportation code."

According to Amboree, Bonton, "[a]gainst the better interest of" The Rhodes School, "executed . . . and illegally backdated" a lease agreement between the school and Jordan's husband. The lease was intended to pay the Jordans for "board meetings (past and present) that were being held at [their] house," despite the fact that The Rhodes School was available for such meetings and was "closer and free." Bonton did this because Jordan was "in need of money."

3

Amboree also alleged that in July 2010, Bonton "violated the [Texas] Open Meetings Act by posting [a board] meeting without sufficient notice." At the July 2010 meeting, Bonton "added her daughter . . . and her very good friend[,] Mignonne Anderson[,] to the budget as new full[-]time employees." And Bonton "increased [The Rhodes School's] transportation budget to allow her to support her daughter['s] and other friend's salar[ies] . . . by intentionally and willfully and fraudulently inflating the [school's] enrollment numbers." When Amboree told Bonton that using "fabricated enrollment numbers was illegal" and that she would not "take part in using" the inflated numbers, Bonton became "very defensive."

In regard to the termination of Amboree's employment with The Rhodes School, Amboree alleged that "[a]t [a] September 2010 board meeting, the board approved terminations that were not an agenda item" and "were not properly noticed." Bonton also provided false information to the board about Amboree and the discontinuation of certain funding for the school. Bonton used the purported lack of funds as a "pre-textual reason" for recommending that Amboree's employment be terminated. According to Amboree,

> After a history of [her] informing . . . Bonton of the illegality, unethical nature and improper business decisions of [Bonton's] actions as they related to The Rhodes School and refusing to participate in such illegal acts . . . , [Bonton] determined that [Amboree] was an obstacle in [her] continuing to use The Rhodes School as a conduit for her own [f]or [p]rofit businesses by siphoning off government funds and taxes . . . .

4

Amboree brought a claim against appellees for violation of the Texas Open Meetings Act, asserting that appellees terminated her employment with The Rhodes School "in a special meeting that was called in violation of [t]he [Texas] Open Meetings Act" and then "took actions in other meetings" which also violated the Texas Open Meetings Act. Amboree alleged that appellees' "actions taken against [her] by terminating her [employment] were void[] [and] invalid . . . because they did not give [her] notice of her proposed termination by including that information on a timely agenda" and "the adverse actions towards [her occurred] in a closed session as opposed to a public session." Amboree also sought a declaration that appellees had violated the Texas Open Meetings Act and that the termination of Amboree's employment was void. She sought damages, attorney's fees, and reinstatement of her employment.

Appellees answered, generally denying the allegations in Amboree's fifth amended petition and asserting certain defenses.

Appellees then filed a motion to dismiss, asserting that the trial court lacked subject-matter jurisdiction over Amboree's suit. According to appellees, Amboree was previously employed by The Rhodes School as its CFO and Business and Human Resources Manager. On September 26, 2010, Amboree's employment with The Rhodes School ended "by a vote of the . . . [b]oard" to dissolve certain employment positions, including "the position of Human Resources

Director/Business Manager." (Internal quotations omitted.) According to appellees, the agenda for the September 26, 2010 meeting was "duly posted" on September 22, 2010. And at the September 26, 2010 meeting, the board "adjourned for a closed session at 7:00 PM to discuss further cuts that would be needed to be made in order to balance the budget." (Internal quotations omitted.) "At 8:00 PM, the [b]oard reconvened in [an] open session[,] and[] on motion and second, the [b]oard unanimously dissolved . . . the position of Human Resources Director/Business Manager." (Internal quotations omitted.) Amboree "appealed the [board's] decision" to eliminate her job position "by filing a notice of grievance on October 4[,] 2010." On October 6, 2010, Bonton, as principal and superintendent of The Rhodes School, "acknowledged receipt of Amboree's notice of grievance" and explained that Amboree's "position was one of seven that was terminated due to a budget shortfall." (Internal quotations omitted.) On October 18, 2010, Amboree "gave formal written notice of her grievance to the [b]oard" by letter and requested reinstatement of her "position of CFO/Business Manager/Human Resources Director at The Rhodes School." (Internal quotations omitted.) And on December 7, 2010, the board posted an agenda for a December 12, 2010 meeting, with an agenda item titled, "Personnel Issues – Grievance Hearings." (Emphasis omitted.) (Internal quotations omitted.) On December 12, 2010, the board "heard [Amboree's]

grievance." On December 22, 2010, the board "ratified the September 26[,] 2010 decision and denied Amboree's grievance," stating:

> After careful consideration, the board has determined that the reasons given for closing your position are true and accurate as stated. We further determined that the decision to close the position was in the best interest of the school. Therefore, we must respectfully deny your request for back pay and reinstatement.

(Internal quotations omitted.) Amboree "did not appeal the [b]oard's ratification of the September 26[,] 2010 decision to eliminate [Amboree's] job position to the Education Commissioner as allowed by Tex[as] Ed[ucation] Code [section] 7.057," but instead "elect[ed] to file . . . suit."

According to appellees, in her fifth amended petition, Amboree alleged that the September 26, 2010 meeting violated the Texas Opening Meetings Act. But she did not complain about the board's December 2010 meeting. Although there was no violation of the Texas Open Meetings Act in connection with the September 26, 2010 meeting, even if the September 26, 2010 meeting had violated the Texas Open Meetings Act, "the ratification of the earlier vote by the [b]oard on December 22[,] 2010 negated any justiciable controversy as to the validity of the earlier vote." In other words, "[the] vote at one meeting ratified the actions taken at an earlier meeting and negated any justiciable controversy as to the validity of the earlier vote, such

that the [trial] court lacked jurisdiction over [Amboree's Texas] Open Meetings Act claim[].["4](Internal quotations omitted.)

In response to appellees' motion to dismiss, Amboree asserted that she "sufficiently alleged her claim[] that [appellees] violated the Texas Open Meetings Act to invoke th[e] [trial] [c]ourt's jurisdiction" and "[t]he evidence [appellees] filed with [their] [m]otion to [d]ismiss raise[d] [a] fact issue that require[d] th[e] [c]ourt to deny [the] [m]otion to [d]ismiss." According to Amboree, "[o]n September 26, 2010, [appellees] illegally fired [her] in a meeting that they failed to notice within 72 hours as required by the Texas Open Meetings Act." And appellees' ratification argument could not prevail because they "wholly failed to notice a second meeting or convene [a] new vote to terminate [Amboree's employment]."

In their reply to Amboree's response, appellees reasserted that they moved to dismiss Amboree's suit because "the ratification of [the board's] earlier decision, in a duly convened meeting, deprive[d] th[e] [trial] [c]ourt of jurisdiction." According to appellees, Amboree did not dispute in her response that the December 12, 2010 meeting "was duly called," that the board had ratified its earlier decision as to termination of Amboree's employment, and that she had not appealed the board's December 22, 2010 decision related to termination of her employment.

---

[4] Appellees attached certain exhibits to their motion to dismiss.

The trial court granted appellee's motion, dismissing Amboree's suit for lack of subject-matter jurisdiction.

**Motion to Dismiss**

In her first and second issues, Amboree generally argues that the trial court erred in granting appellees' motion to dismiss for lack of subject-matter jurisdiction because appellees "fail[ed] to set forth a standard of review, any elements, or evidence required for their motion to succeed," Amboree "sufficiently alleged her claim[] that [appellees] violated the Texas Open Meetings Act," "a[n] [unspecified] fact issue required the [trial] [c]ourt to deny the[] motion," and the "[f]ailure to properly follow the law [was] an abuse of discretion" by the trial court.

"An appellate brief is meant to acquaint the court with the issues in a case and to present argument that will enable the court to decide the case." *Schied v. Merritt*, No. 01-15-00466-CV, 2016 WL 3751619, at *2 (Tex. App.—Houston [1st Dist.] July 12, 2016, no pet.) (mem. op.) (internal quotations omitted). Texas Rule of Appellate Procedure 38.1(i) requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). "This is not done by merely uttering brief conclusory statements, unsupported by legal citations." *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *see also Barham v. Turner Constr. Co. of Tex.*, 803 S.W.2d

9

731, 740 (Tex. App.—Dallas 1990, writ denied) (appellant bears burden of discussing his assertions of error). The failure to provide substantive analysis of an issue or cite appropriate authority waives a complaint on appeal. *Marin Real Estate Ptrs., L.P. v. Vogt*, 373 S.W.3d 57, 75 (Tex. App.—San Antonio 2011, no pet.); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.); *Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 255 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Amboree's argument section of her brief consists of a little more than two pages, contains bare assertions of error, and is devoid of legal authority supporting her complaint that the trial court erred in granting appellees' motion to dismiss.[5] *See Washington v. Bank of New York*, 362 S.W.3d 853, 854–55 (Tex. App.—Dallas 2012, no pet.) ("Bare assertions of error, without argument or authority, waive error."); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("[P]arties asserting error on appeal still must put forth some specific argument and analysis showing that the record and the law supports their contentions."); *see also Schied*, 2016 WL 3751619, at *2 ("An appellate brief is meant to acquaint the court with the issues in a case and to present argument that will enable the court to decide the case." (internal quotations omitted)). Here, Amboree has failed to provide this Court with appropriate

---

[5] Amboree's reply brief also lacks legal authority supporting her complaint.

10

argument, analysis, explanation, and support for her complaint on appeal. *See* TEX. R. APP. P. 38.1; *M&E Endeavors LLC v. Air Voice Wireless LLC*, Nos. 01-18-00852-CV, 01-19-00180-CV, 2020 WL 5047902, at \*7 (Tex. App.—Houston [1st Dist.] Aug. 17, 2020, no pet.) (mem. op.) ("The briefing requirements are mandatory . . . ."); *Richardson v. Marsack*, No. 05-18-00087-CV, 2018 WL 4474762, at \*1 (Tex. App.—Dallas Sept. 19, 2018, no pet.) (mem. op.) ("Our appellate rules have specific requirements for briefing," including requiring "appellants to state concisely their complaints, to provide succinct, clear, and accurate arguments for why their complaints have merit in law and fact, to cite legal authority that is applicable to their complaints, and to cite appropriate references in the record."); *Huey*, 200 S.W.3d at 854 ("We have no duty to brief appellant's issue for her. Failure to cite to applicable authority or provide substantive analysis waives an issue on appeal."); *Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 677–78 (Tex. App.—Dallas 2004, pet. denied) (appellate court cannot remedy deficiencies in appellant's brief and argue her case for her).

Accordingly, we hold that Amboree has waived her first and second issues on appeal because they are inadequately briefed. *See Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895 (Tex. App.—Dallas 2010, no pet.) ("Only when we are provided with proper briefing may we discharge our responsibility to review the appeal and make a decision that disposes of the appeal one way or the other.").

11

## Conclusion

We affirm the judgment of the trial court.

Julie Countiss
Justice

Panel consists of Chief Justice Radack and Justices Countiss and Farris.